Daniel G. RAHAL, Plaintiff,

v.

CRESTMONT CADILLAC
CORPORATION,
Defendant.

Civ. A. No. C80–2337.

United States District Court,
N. D. Ohio, E. D.

May 6, 1981.

Rush P. Webb, Cleveland, Ohio, for plaintiff.

Bruce P. Mandel, Cleveland, Ohio, for defendant.

## ORDER

CONTIE, District Judge.

Pending before the Court in the above captioned case are cross motions for summary judgment. The defendant Crestmont Cadillac Corporation (Cadillac) asserts that it is entitled to summary judgment on the basis that as a matter of law the plaintiff has not suffered any injury for the antitrust violations alleged within his complaint. The plaintiff Rahal, on the other hand, asserts that he is entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the basis that there can be no dispute as to liability or damages. Upon consideration and for the reasons stated below, the Court hereby grants the defendant Cadillac's motion for summary judgment and denies the plaintiff's motion.[1]

The plaintiff brought this action pursuant to sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 & 2, and section 3 of the Clayton Antitrust Act, 15 U.S.C. § 14. The plaintiff asserts that the defendant Cadillac's lease agreement, by which the defendant leased a Cadillac automobile to the plaintiff, violates the above mentioned antitrust laws in that the lease agreement lessens competition, restrains trade or commerce, and attempts to create a monopoly.

On or about April 12, 1977, the plaintiff and the defendant entered into a lease agreement whereby the defendant leased a 1977 Cadillac automobile to the plaintiff for a term of thirty-six months in consideration for a stipulated monthly rental. As part of the provisions of the lease agreement, paragraph 6(b) provided as follows:

> Lessee agrees to cause each leased vehicle to be maintained in good repair and to be returned to lessor [at] the end of the leased term in good repair, ordinary wear accepted. All repairs shall, in the absence of emergency, be made only at authorized dealers of the make of the leased vehicle.

During the term of the lease agreement between the plaintiff and the defendant, it became necessary for the plaintiff Rahal to have the leased Cadillac repaired. The plaintiff determined that Cadillac's estimate of cost of repairs was excessive and consequently had the leased vehicle repaired elsewhere. At the conclusion of the lease period, the plaintiff then returned the leased Cadillac to the defendant.

---

1. In the plaintiff's motion for summary judgment, the plaintiff asserts that there can be no dispute as to liability or damages and that he, therefore, is entitled to summary judgment. The substance of the plaintiff's brief in support of his motion for summary judgment centralizes on the dispute between the parties over whether or not the plaintiff can prove an antitrust injury. Contrary to the suggestion made within the plaintiff's motion, however, assuming that the Court finds that the plaintiff can potentially prove an antitrust injury, there would remain a dispute between the parties over whether or not the defendant Cadillac has violated the antitrust laws. The Court, therefore, hereby denies the plaintiff's motion for summary judgment and shall treat this motion as plaintiff's brief in opposition to the defendant's motion for summary judgment.

Not satisfied that the plaintiff had complied with paragraph 6(b) of the lease agreement, the defendant Cadillac filed a lawsuit against the plaintiff for breach of the lease agreement in the Shaker Heights, Ohio, Municipal Court. Within its three-count complaint, Cadillac asserted that it had been damaged on the basis that 1) Rahal failed to maintain the leased vehicle in good repair, and/or failed to return the leased vehicle in good repair, and/or failed to have the repairs made at an authorized dealer of the make of the leased vehicle, 2) Rahal owed Cadillac $449.68 as a mileage charge pursuant to the terms of the lease agreement, and 3) as a result of Rahal's failure to promptly make his lease payments, Cadillac was damaged in the amount of $28.35. Cadillac demanded judgment against Rahal in the Shaker Heights Municipal Court, therefore, for the sum of $4,779.93 plus interest and costs.

Plaintiff Rahal then filed his complaint for antitrust violations against the defendant with this Court. The plaintiff asserts that part of the lease provision that he allegedly breached creates a tying agreement in violation of the antitrust laws because it requires the lessee to agree to have all non-emergency repairs done by an authorized Cadillac dealer as a condition for obtaining a Cadillac for lease.

Shortly thereafter, the plaintiff also filed with the Shaker Heights Municipal Court a motion to dismiss that action on the basis that the lease agreement was invalid inasmuch as it was violative of Ohio and federal antitrust laws. The Shaker Heights Municipal Court denied Rahal's motion to dismiss on the basis that this federal district court was the more appropriate forum for determining the antitrust violations raised by Rahal. Additionally, the municipal court stated that no evidence was received con-

cerning the question of repairs to the leased automobile by other than an "authorized Cadillac dealer" and Cadillac did not ask for damages because of Rahal's failure to obtain such authorized repairs. The Shaker Heights Municipal Court then rendered judgment for the plaintiff Crestmont Cadillac on the basis of all three counts of its complaint in the sum of $2,773.03 plus interest and costs.[2]

Within this factual background the defendant Cadillac's motion for summary judgment asserts that the plaintiff Rahal has not suffered any injury caused by the defendant's alleged antitrust violation. The plaintiff Rahal had the repairs done to the leased vehicle by one other than an authorized Cadillac dealer. Further, the municipal court did not award damages to Crestmont Cadillac on the basis of plaintiff Rahal's failure to obtain repairs by an authorized Cadillac dealer as required by the terms of the lease agreement. Cadillac, therefore, contends that the alleged antitrust violation (lease provision requiring all non-emergency repairs be done by an authorized Cadillac dealer) has not caused injury to the plaintiff's business or property.

The plaintiff Rahal asserts, however, that inasmuch as the lease was void because it violated the antitrust laws, he is entitled to recover his lease payments plus that portion of his counsel fees required to defend against the claim in the Shaker Heights Municipal Court that Rahal failed to have the repairs done on the leased automobile by an authorized Cadillac dealer. Rahal asserts that even though this claim was never litigated by the parties in the municipal court he nevertheless suffered injury on the basis of having to file a motion to dismiss.

2. Although the municipal court awarded judgment on all three counts of Crestmont Cadillac's complaint, where count one included an allegation that Rahal failed to have non-emergency repairs done at an "authorized dealer of the make of the leased vehicle", it is clear from the court's journal entry that the court did not award damages to Crestmont Cadillac for Rahal's failure to obtain repairs at an authorized

Cadillac dealer. The court stated that no damages were asked for by Cadillac nor awarded to Cadillac for Rahal's failure to obtain such authorized repairs. The court's award under count one, therefore, necessarily was based on the court's finding that Rahal failed to maintain the leased vehicle in good repair, and/or failed to return the leased vehicle to Cadillac in good repair.

■ Although not mentioned within his complaint, plaintiff Rahal seeks treble damages pursuant to section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15. That section provides in pertinent part:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States in the district in which the defendant resided or is found or has an agent without respect to the amount in controversy and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

Under the provisions of section 4 of the Clayton Act, to recover damages the plaintiff must be able to prove more than that the defendant Cadillac violated sections 1 and 2 of the Sherman Act and/or section 14 of the Clayton Act. In a private action under the antitrust laws, in addition to having to prove an antitrust violation, the plaintiff must also be able to prove that he has been injured "in his business or property" because of the antitrust violation. Further, such injury must amount to an "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-o-mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *cf. Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229 at 1234 (6th Cir., 1981).

■ In determining whether summary judgment is appropriate, the Court recognizes that the Federal Rules of Civil Procedure, Rule 56(c) provides that summary judgment is appropriate if there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law. Further, the Court also recognizes that the granting of summary judgment in antitrust litigation is disfavored, especially in tie-in cases. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Ware v. Trailer Mart, Inc.*, 623 F.2d 1150 (6th Cir. 1980). For purposes of this motion

for summary judgment by the defendant Cadillac, therefore, the Court will assume the truth of the plaintiff's allegations that the defendant Cadillac has violated the antitrust laws of the United States. Assuming this, the Court will determine whether or not there exists a material issue of fact concerning the necessary element of injury and whether or not the defendant is entitled to judgment as a matter of law.

The Supreme Court of the United States in *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979), stated that a consumer may recover damages under section 4 of the Clayton Act for antitrust violations under the language "injured in his business or property" for injury to the consumer's property including monetary damage. The fact that a consumer is not engaged in a business enterprise does not prevent a consumer from recovery under section 4. The *Reiter* Court stated that "a consumer deprived of money by reason of allegedly anti-competitive conduct is injured in his 'property' within the meaning of section 4." *Id.* 99 S.Ct. at 2333.

Following the Supreme Court's reasoning in the *Reiter* case, the Sixth Circuit Court of Appeals held that summary judgment was improper as against a consumer who alleged to have suffered monetary loss as a result of alleged antitrust violations, constituting injury to his property within the purview of section 4 of the Clayton Act. *Ware v. Trailer Mart, Inc.*, 623 F.2d 1150 (6th Cir. 1980). In the *Ware* case, the plaintiff alleged that the defendant had violated the antitrust laws because it "tied" purchases of mobile homes to the leasing of space in its trailer park. The Sixth Circuit held that even though the plaintiff did not enter into a lease agreement requiring the purchase of a mobile home, he sufficiently alleged monetary damage by stating that because of the lack of mobile home rental space in the Cleveland area, he had to lease an apartment in addition to making mortgage payments on his already purchased mobile home. The injury claimed in the *Ware* case was that had the defendant not had a tying arrangement requiring the pur-

chase of a mobile home in order to obtain a lease of space in its trailer park, the plaintiff would not have had to rent an apartment and could have lived within his already purchased mobile home. The court, therefore, found that Ware's monetary loss was causally connected to the defendant's anticompetitive conduct in tying a homesite lease to a trailer purchase. In other words, the *Ware* court held that a consumer may recover monetary damages, as injury to his property, where the monetary damage is caused by the antitrust violation.

In the present case, the plaintiff Rahal has alleged he has been monetarily damaged 1) because he has had to make lease payments under an invalid lease agreement and 2) because he has had to defend against a claim in a municipal court that violated the antitrust laws. The Court first notes that, unlike the *Ware* case, the plaintiff does not assert that the tying provision of the lease he had with Cadillac prevented him from exercising the rights he claims the unlawful lease provision prohibits. At the time that the leased Cadillac that the plaintiff possessed needed repairs, the plaintiff had the repairs done by one other than an authorized Cadillac dealer. Also, the plaintiff admits that the costs in having the repairs done to the leased automobile were less expensive than what would have been charged at an authorized Cadillac dealer. No monetary damage was suffered by the plaintiff, therefore, in his efforts to have his leased Cadillac repaired.

■ Second, the Court finds that the plaintiff's allegation that he has been damaged on the basis of having made payments under an invalid lease agreement (inasmuch as the violation of the antitrust lease invalidates the entire lease) does not state an antitrust injury recoverable as an injury to his property under section 4 of the Clayton Act. The lease payments were made during the life of the lease in exchange for the use of the leased Cadillac. To allow the plaintiff to recoup these payments on the ground that the entire lease was invalid would constitute unjust enrichment—not antitrust damages.

The basis of the plaintiff's claim that he has been damaged for having made payments under the invalid lease agreement is that the alleged antitrust violation is a defense to a suit on the contract or lease. Since the contract or lease violates the antitrust laws it is unenforceable and void.

The Supreme Court of the United States and the Sixth Circuit Court of Appeals have held that "[t]he use of this defense, however, is not favored and has been limited . . . strictly to situations where enforcement of a debt or contract would make the courts 'a party to the carrying out of one of the very restraints forbidden by the Sherman Act.' " *Atlantic Richfield Co. v. Malco Petroleum, Inc.*, 471 F.2d 1258, 1260 (6th Cir. 1972) (citing *Kelly v. Kosuga*, 358 U.S. 516, 520, 79 S.Ct. 429, 431, 3 L.Ed.2d 475 (1959)). The Court in *Malco* stated that there is "a general policy 'of preventing people from getting other people's property for nothing when they purport to be buying it.' " *Id.* at 1260 (quoting *Continental Wallpaper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 271, 29 S.Ct. 280, 296, 53 L.Ed. 486 (Holmes, J., dissenting opinion)).

In the present case, the Court finds that the lease payments already made by the plaintiff for the use of the leased Cadillac are not related to the alleged antitrust violations and enforcement of this part of the lease will not make the court a party to the alleged antitrust violation. Consequently, because the alleged antitrust violation is not a defense to the enforcement of the lease payment provision, the plaintiff cannot claim these payments as damages suffered due to the antitrust violations.[3]

---

3. Additionally, the Court finds that an allegation that the antitrust violation invalidates the lease so as to constitute a defense in the municipal court case is equally incorrect. The municipal court holding was not based on the provision claimed to be violative of the antitrust laws. Also, the enforcement of the lease by the municipal court requiring the plaintiff to maintain and return the leased vehicle in good repair did not make that court a party to the alleged antitrust violation. The antitrust violation, therefore, could not have constituted a

There is absolutely no causal connection between the alleged antitrust violation and the payments for the use of the leased automobile under the lease.

The only issue concerning damages, therefore, is whether or not the plaintiff's defense in the Shaker Heights Municipal Court against the claim brought by the defendant Cadillac against Rahal, in which the defendant Cadillac asserted that it was damaged via the plaintiff's failure to take the leased Cadillac for repairs to an authorized Cadillac dealer, constitutes an injury to the plaintiff's property by reason of the defendant's antitrust law violations. The plaintiff Rahal's claim is that even though the defendant withdrew its claim for damages in the Shaker Heights Municipal Court case based on the plaintiff's failure to take the leased Cadillac to an authorized Cadillac dealer for repairs, he nevertheless was monetarily damaged via the cost of submitting a motion to dismiss on the basis of the antitrust violation. The plaintiff alleges that this defense (i. e. the cost of attorney's fees) is a sufficient enough monetary damage to sustain the action herein.

In finding that the defending of a patent infringement suit could constitute antitrust damages, the Sixth Circuit Court of Appeals stated that "[w]hen the antitrust violations are causally connected to the infringement action it is permissible to include the expense of defending that action in the award of damages." *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.*, 562 F.2d 365 (6th Cir. 1977). Within the *Milacron* case, the Sixth Circuit stated that although "no barrier should be erected which prevents free access to the courts" access to the courts should not be used as an integral part of the conduct violative of the antitrust laws. Thus, the cost of defending an infringement suit that was brought for the purpose of establishing or attempting to establish an illegal monopoly may be awarded as damages under section 4 of the Clayton Act inasmuch as the infringement

action is causally connected with the antitrust violations.

The court in *Milacron* distinguished the case *American Infra-Red Radiant Co. v. Lambert Industries, Inc.*, 360 F.2d 977 (8th Cir.), *cert. denied*, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966), which did not allow the assessment of the cost of defending a patent infringement case as damages to an antitrust claim. The Sixth Circuit Court explained that in *Lambert* there was no specific misuse in bringing the infringement suit and therefore no causal connection between the infringement action and the antitrust activities. *Kearney & Trecker Corp. v. Cincinnati Milacron, Inc.*, at 374.

In *Lambert* the Eighth Circuit Court of Appeals held that patent litigation expenses may only be considered as antitrust damages where the infringement suit is brought as part of and in furtherance of the antitrust activities. The *Lambert* court also held that "whenever the patent litigation is initiated pursuant to a lawful purpose and there is no causal connection between the bringing of the action and the illegal conduct, the cost of the defense of the suit cannot become an element of damage which is tripled under the Clayton Act." *American Infra-Red Radiant Co. v. Lambert Industries, Inc.*, 360 F.2d 977, 997 (8th Cir.), *cert. denied*, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966).

■ Reading the *Milicron* case in conjunction with the *Lambert* case, this Court concludes that the interest in not erecting barriers preventing free access to the courts is outweighed when a plaintiff brings a lawsuit as an integral part of the conduct violating the antitrust laws. The cost of defending such lawsuits, where the bringing of such lawsuit is causally connected to antitrust activities, may properly be assessed as damages in an antitrust action. Where a lawsuit is brought for a lawful purpose and in good faith, however, the defense of that suit cannot be considered an element of damages under the antitrust laws.

valid defense to Cadillac's suit in municipal court. *Atlantic Richfield Co. v. Malco Petroleum, Inc.*, 471 F.2d 1258 (6th Cir. 1972). Conse-

quently, the plaintiff cannot allege that the municipal court improperly enforced an invalid lease.

The United States Supreme Court has stated that the right of access to courts is one aspect of the first amendment right to petition the government. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mineworkers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). In the *California Motor Transport* case, the Court held, however, that this first amendment protection guaranteeing free access to courts, does not immunize litigation that is used as an integral part of conduct which violates a valid statute. The right to free access "may not be used as the means or the pretext for achieving 'substantive evils' which the legislature has the power to control." *Id.* at 515, 92 S.Ct. at 614.[4]

The Supreme Court, in recognizing that unethical conduct amounting to the abuse of the judicial process can take many forms, including, for example, the use of a patent obtained by fraud to exclude a competitor from the market, e. g. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), stated that "[o]ne claim, which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused." *California Motor Transport Co. v. Trucking Unlimited,* at 513, 92 S.Ct. at 613.

Since the *California Motor Transport* case, the Supreme Court has subsequently held that harassing and sham state-court proceedings could be found to be part of an anti-competitive scheme or conspiracy. *Vendo Co. v. Lektrovend Corp.,* 433 U.S. 623, 635 n.6, 97 S.Ct. 2881, 2889 n.6, 53

L.Ed.2d 1009 (1977); *Otter Tail Power Co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). In the *Otter Tail* case, one of the allegations against the Otter Tail Power Company was that it had instituted state-court litigation for anti-competitive purposes in violation of the antitrust laws. The district court enjoined' *Otter Tail Power Company* from "instituting, supporting, or engaging in litigation, directly or indirectly, against municipalities and their officials who have voted to establish municipal electric power systems for the purpose of delaying, preventing, or interfering with the establishment of the municipal electric power system." The Supreme Court remanded the case to the district court, in light of the *California Motor Transport* decision to require the district court to determine if such litigation was a mere sham litigation and, therefore, unprotected under the first amendment right to petition the government.

▮ The rationale of all of these cases is that in order to find a causal connection between violations of the antitrust laws and the institution of lawsuits in federal or state courts, the instituted lawsuits must have been brought as mere shams to cover up the actual attempt to further violate the antitrust laws. And, absent such causal connection linking the lawsuit to the conduct violating the antitrust laws, the cost of defending the lawsuit may not be assessed as monetary damages injuring the plaintiff's property in an antitrust action. Without the finding of a sham lawsuit, the institution of lawsuits within the courts of the United States is a protected first amendment right to petition the government.

In the present case, the plaintiff Rahal has not asserted any evidence that the institution of the state-court proceeding by

---

**4.** The suit in *California Motor* was brought by the respondent Trucking Unlimited against California Motor Transport Company for injunctive relief and damages. Trucking Unlimited charged California Motor with conspiring to monopolize trade and commerce by instituting state and federal proceedings for the purpose of resisting and defeating applications for operating rights by Trucking Unlimited. The Supreme Court held that the institution of these court proceedings could constitute an antitrust violation overriding the first amendment right to free and unlimited access of the courts, if these lawsuits were found to be an abuse of the judicial process and a sham to coverup antitrust violations.

Crestmont Cadillac was the institution of a sham proceeding for purposes of enhancing an antitrust violation. All that the plaintiff herein claims is that one of the counts asserted in the state-court proceeding by Crestmont Cadillac was based, in part, on a provision in the lease agreement between the parties that violated the antitrust laws. Such an allegation, however, does not taint the whole proceeding instituted by Crestmont Cadillac as being an abuse of the judicial process. Further, the finding of the judge in the Shaker Heights Municipal Court illustrates that the action brought by Crestmont Cadillac was not an abuse of the judicial process but was in fact a litigation in pursuit of its good faith claims. The Shaker Heights Municipal Court found that Rahal had violated the lease agreement by failing to keep the leased automobile in good repair and by failing to return the leased automobile to Crestmont Cadillac in good repair. Crestmont Cadillac was thereby awarded damages by the municipal court.

Finally, the plaintiff Rahal does not even allege that the claim asserted by Crestmont Cadillac that Rahal failed to have the leased automobile repaired at an authorized Cadillac dealer was a claim instituted or alleged for the purposes of enhancing an antitrust violation. Instead, all that Rahal alleges is that this lease provision violates the antitrust statutes and that because Crestmont Cadillac attempted to recover damages under this lease provision the plaintiff Rahal has been damaged under the antitrust laws for having to defend against this claim.

The Court concludes, therefore, that no causal connection exists between the alleged antitrust violations and the institution of the state-court proceeding by the defendant Crestmont Cadillac. The Court finds that the litigation in the Shaker Heights Municipal Court proceeded in good faith between the parties and resulted in a judgment for Crestmont Cadillac. Finally, the Court finds that in the absence of a sham litigation, the plaintiff Rahal may not obtain damages under its antitrust claim on the basis that it had to defend that lawsuit in the state court proceeding.

Inasmuch as the plaintiff's defense in the municipal court does not constitute damages caused by antitrust violations, and inasmuch as the plaintiff Rahal has not been damaged in his business or property in any other way via violations by the defendant of the antitrust laws, the Court concludes that as a matter of law the defendant Crestmont Cadillac is entitled to judgment in its favor. Rahal has not asserted any injury to his property that could constitute damages in this private antitrust action.

Accordingly, the Court hereby grants the defendant Crestmont Cadillac's motion for summary judgment.

IT IS SO ORDERED.