**George WARE, Plaintiff-Appellant,**

v.

**TRAILER MART, INC., dba Columbia Park, Defendant-Appellee.**

**No. 78–3383.**

United States Court of Appeals, Sixth Circuit.

Argued April 18, 1980.

Decided June 23, 1980.

Richard A. Dean, Arter & Hadden, M. Neal Rains, Cleveland, Ohio, for plaintiff-appellant.

William J. Brown, Atty. Gen. of Ohio, Richard M. Firestone, Asst. Atty. Gen., Columbus, Ohio, for amicus curiae State of Ohio.

Robert Goodman, Benesch, Friedlander, Coplan & Aronoff, Warren P. Geiger, Carney & Broadbent, John R. Jewitt, Jr., Cleveland, Ohio, for defendant-appellee.

Before LIVELY and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Appellant George Ware brought this private antitrust action under 15 U.S.C. §§ 1, 14, 15, and 26 against Trailer Mart, Inc., d/b/a Columbia Park. He sought monetary and injunctive relief, claiming that defendant violated Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1[1] by tying mobile home purchases by prospective tenants to leases in its trailer park. Ware asked for treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.[2]

The district court granted Trailer Mart's motion for summary judgment, holding that allegations of "injury in his business or property" were limited to commercial ventures. As a consumer, Ware had no recourse to the protection of the antitrust laws. The court also found that appellant had failed to allege or prove that defendant possessed and abused economic power in the market for the tying product (rental space).

Appellant, a United States Army officer, was transferred to Cleveland, Ohio from Texas, where he and his wife had been living in a mobile home. Before moving to Cleveland, Captain Ware attempted to locate a suitable trailer park near his new station. He contacted approximately 25 mobile home parks in the Cleveland area, including Columbia Park. There he was told that spaces were rented only on the condition that the tenant purchase a mobile home from the defendant.[3] All but one or two of the nearly 500 mobile homes in Columbia Park had in fact been purchased from Trailer Mart.

Captain Ware claimed that mobile home rental space was scarce in 1973, in part as a result of zoning restrictions and ordinances. The desirability of living at Columbia Park was enhanced by its disproportionate share of the rental space in Cleveland. Unable to find a suitable location, Captain Ware leased an apartment and parked his trailer in nearby Portage County, Ohio. He continued to make mortgage payments on his mobile home. His claim of $6,000 represents losses incurred renting the apartment and mobile home space simultaneously.

The district court's opinion requires us to rule on two substantive issues: first, whether, as a consumer, Captain Ware has standing to sue under Section 4; and second, whether appellant's failure to demonstrate before trial "appreciable economic power" on the part of Trailer Mart justified summary judgment in favor of defendant.

We begin our discussion of Section 4 standing by noting that the Sherman Act has been described as "conceived primarily as a remedy for 'the people of the United States as individuals,' especially consumers," and that the Clayton Act's treble-damages provision was "conceived primarily as 'open(ing) the door of justice to every man . . . and giv(ing) the injured party ample damages for the wrong suffered.'" *Brunswick v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 n.10, 97 S.Ct. 690, 696 n.10, 50 L.Ed.2d 701 (1977).

The Supreme Court recently held that "a consumer whose money has been diminished by reason of an antitrust violation has been injured 'in his . . . property' within the meaning of § 4." *Reit-*

---

1. Section 1 of the Sherman Act provides:
   Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . ..

2. Section 4 of the Clayton Act provides in pertinent part:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained . . . ..

3. Trailer Mart conceded this allegation for purposes of its motion for summary judgment.

*er v. Sonotone Corporation*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). In *Reiter*, the plaintiff claimed wrongful monetary deprivation in that the price of a hearing aid she had purchased was artificially inflated by the defendant's anticompetitive conduct. The court found that she had properly alleged an injury in her "property" under Section 4. Similarly, Captain Ware's status as a consumer does not alter the nature of his injury. He, too, has suffered monetary loss as a result of an alleged antitrust violation, an injury in his "property" within the purview of the Clayton Act. *See Gutierrez v. E & J Gallo Winery Co., Inc.*, 604 F.2d 645 (9th Cir. 1979).

Trailer Mart attempts to distinguish *Reiter* by noting that Mrs. Reiter actually purchased the hearing aid at an illegally inflated price. Here, insists defendant, Captain Ware never intended to enter into the tying arrangement since he did not want to purchase a mobile home. We believe that this argument begs the question. Captain Ware has alleged a wrongful deprivation of money by having to pay double rent for the apartment and mobile home rental space. He incurred this loss because of Trailer Mart's anticompetitive conduct in tying homesite leases to trailer purchases. We therefore find that Ware has properly claimed an injury under Section 4 and may, accordingly, sue to recover damages for the alleged violations of Section 1 of the Sherman Act.

In his second argument, appellant contends that the district court granted summary judgment prematurely on the Section 1 claim. He disputes the finding below that he failed to allege or prove that defendant possessed "appreciable economic power" in the market for the tying product. The district court indicated that the complaint contained no allegations concerning defendant's market power. We note, however, that Paragraph 10 of appellant's amended complaint reads:

> The defendant has *market power over the mobile home lot sites* by virtue of a number of factors including, the great demand for mobile home sites in the area; the limited number of parks in the area, and therefore the limited number of unoccupied mobile home sites available for rentals; the defendant's ownership and control of unique mobile sites; the strategic convenient location and attractiveness of the park. (emphasis added)

Thus, as a preliminary matter of pleading, we believe that appellant did, in fact, sufficiently allege defendant's "appreciable economic power" over mobile home rental space.

On a substantive level, appellant argues that "appreciable economic power" is relevant only if he intends to prove a *per se* violation of Section 1. Otherwise, he suggests, he should be allowed to proceed under the "Rule of Reason."[4] We agree.

In *Fortner Enterprises v. U. S. Steel Corporation*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969) (*Fortner I*), the Supreme Court confronted a traditional tying arrangement where credit was sold only on the condition that the petitioner also purchase prefabricated houses. The trial court, relying on *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958), had held that the respondents did not have "sufficient economic power" over the tying product, credit. Furthermore, according to the trial court, the effect on interstate commerce was not "substantial." The Supreme Court reversed, and clarified the controlling standards as follows:

> A preliminary error that should not pass unnoticed is the District Court's assumption that the two prerequisites mentioned

---

**4.** The applicable test under this theory was set forth in *Standard Oil Co. v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). Challenged contracts or acts must be "unreasonably restrictive of competitive conditions." Unreasonableness may "be based either on (1) the nature or character of the contracts, or (2) on surrounding circumstances giving rise to the inference or presumption that they were intended to restrain trade and enhance prices. Under either branch of the test, the inquiry is confined to a consideration of impact on competitive conditions." *National Society of Professional Engineers v. U. S.*, 435 U.S. 679, 690, 98 S.Ct. 1355, 1364, 55 L.Ed.2d 637 (1978). *See also Clairol, Inc. v. Boston Discount Center of Berkley, Inc.*, 608 F.2d 1114 (6th Cir. 1979).

in *Northern Pacific* are standards that petitioner must meet in order to prevail on the merits. On the contrary, these standards are necessary only to bring into play the doctrine of *per se* illegality. Where the standards were found satisfied in *Northern Pacific*, and in *International Salt Co. v. United States*, 332 U.S. 392 [, 68 S.Ct. 12, 92 L.Ed. 20] (1947), this Court approved summary judgment *against* the defendants but by no means implied that inability to satisfy these standards would be fatal to a plaintiff's case. *A plaintiff can still prevail on the merits whenever he can prove, on the basis of a more thorough ex-examination of the purposes and effects of the practices involved, that the general standards of the Sherman Act have been violated.* Accordingly, even if we could agree with the District Court that the *Northern Pacific* standards were not satisfied here, the summary judgment against petitioner still could not be entered without further examination of petitioner's general allegations that respondents conspired together for the purpose of restraining competition and acquiring a monopoly in the market for prefabricated houses. (emphasis added)

*Fortner I*, 394 U.S. at 499, 89 S.Ct. at 1257. *See also Anderson Foreign Motors v. New England Toyota Distributors, Inc.*, 475 F.Supp. 973, 981 (D.Mass. 1979). It is apparent to us that appellant should have been permitted to proceed with his case on a "rule of reason" basis.

Finally, we must examine the granting of summary judgment in light of the fact that the "economic power" issue had not been raised in the parties' briefs before the district court. The defendant never argued that it lacked "appreciable market power," yet the court below relied on this theory in its memorandum opinion. On this question, both parties refer us to Professors Wright and Miller's treatise:

A court is not confined to the particular propositions of law advanced by the parties on a motion for summary judgment. Once it is determined that there is no genuine issue as to any material fact and that a party is entitled to the benefit of a judgment as a matter of law, judgment should be entered even though the legal principles relied upon by the court may differ from those that have been urged upon it by the litigants. *Nevertheless, a court should be cautious in this situation inasmuch as there is a greater possibility of error* when the opposing party, who may be able to demonstrate that a genuine issue exists, has not done so because the facts relating to the particular legal principles urged by the movant were not in issue. Therefore, *the court normally should give the parties notice when it intends to rely on a legal doctrine or precedent other than those briefed and argued by the litigants.* (emphasis added)

10 Wright and Miller, *Federal Practice and Procedure:* Civil § 2725. In this case the trial court neither exercised caution nor notified the parties of its intention to base summary judgment on "lack of economic power" grounds.

██ In summary, we recognize that the granting of summary judgments in antitrust litigation is disfavored. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). This is especially true in tie-in cases. *Fortner I, supra.* At a minimum, appellant should be allowed to proceed with his case on a rule of reason basis. Insofar as the elements of any *per se* offense are concerned, appellant was prematurely foreclosed from developing the necessary facts at trial. Despite the defendant's efforts to limit appellant's attack to an argument based on "uniqueness" of availability in the marketplace, Captain Ware has asserted various alternative means of proving that defendant possesses the requisite "economic power." *See, e.g., Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207 (9th Cir. 1977). In addition to "uniqueness," economic power may also be shown by the tying product's desirability to consumers, even though the power may exist only in regard to some buyers in the market. *See, e.g., United States v. Loew's*, 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962). In any event, "the proper focus of concern is whether the seller has the power to raise prices, *or impose other burdensome terms*

*such as a tie-in,* with respect to any appreciable number of buyers within the market." (emphasis added) *Fortner I, supra,* 394 U.S. at 504, 89 S.Ct. at 1259. The allegations raised in the amended complaint, particularly those set forth in Paragraph 10, should not have been disposed of by summary judgment. Appellant has raised genuine issues of "economic power" which must be handled on a rule of reason basis. Captain Ware is entitled to proceed to trial under this theory, or on a *per se* theory, or perhaps both if he so chooses. *See Fortner I, supra,* and *Loew's, supra.*

The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent herewith.