**MAGIC CHEF, INC., Plaintiff,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, Defendant.**

No. 82 C 7347.

United States District Court, N.D. Illinois, E.D.

March 9, 1983.

George W. Gessler, Rooks, Pitts, Fullagar & Poust, William M. Stevens, David C. Gustman, Chicago, Ill., for plaintiff.

Thomas B. McNeill, Mayer, Brown & Platt, Stephen M. Shapiro, Kelly R. Welsh, Priscilla P. Weaver, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Magic Chef, Inc. ("Magic Chef") sues Rockwell International Corporation ("Rockwell"), claiming Rockwell prevented its joint venturer Raisbeck Group ("Raisbeck") from fulfilling Raisbeck's contractual obligation to retrofit Magic Chef's Rockwell-manufactured aircraft with the "Mark V System" technology developed by the joint venture. Magic Chef's Complaint embraces three antitrust claims and two pendent state claims:

1. Count I alleges Rockwell conspired with Raisbeck, in violation of Sherman Act § 1 ("Section 1"), 15 U.S.C. § 1, to deprive Magic Chef of the Mark V modification by first eliminating Raisbeck as a competitor and then withdrawing its aerodynamic technology from the market.

2. Count II asserts the same conspiracy violated Sherman Act § 2 ("Section 2"), 15 U.S.C. § 2.

3. Count III charges Rockwell alone breached Section 2 by monopolizing the Mark V modification market.

4. Count IV claims Rockwell tortiously interfered with Magic Chef's contractual relations with Raisbeck.

5. Count V contends Rockwell, as Raisbeck's joint venture collaborator, is liable for Raisbeck's breach of contract.

Rockwell has now moved under Fed.R. Civ.P. ("Rule") 12(b)(6) to dismiss all five counts.[1] For the reasons stated in this memorandum opinion and order, Rockwell's motion is granted as to Counts I, II and V and denied as to Counts III and IV.

### Allegations of the Complaint [2]

From 1976 through 1979 Rockwell and Raisbeck embarked on a joint venture to develop, produce and market aerodynamic alterations of Rockwell's Sabreliner business jets. Those modifications, which became known as the Mark V System, comprised a new-shaped wing and stabilizer components designed to enhance the Sabreliner's performance and fuel efficiency. Under their agreements, both Rockwell and Raisbeck could install the Mark V modification on existing Sabreliner jets.[3] No one else had the operational capacity or governmental authorization to do so.

In August 1977 Magic Chef entered into a contract (the "Purchase Agreement") with Raisbeck to incorporate the Mark V System into Magic Chef's Sabreliner. It later prepaid Raisbeck $301,830 on the Purchase Agreement. Retrofitting of Magic Chef's aircraft was scheduled for January 1980.

During the intervening period, however, Rockwell launched various predatory initiatives to squelch Raisbeck, its only rival in the Mark V retrofit market. Indeed, Rockwell had initially selected Raisbeck as its joint venture associate precisely because Raisbeck's precarious financial posture heightened Rockwell's prospects "of falling heir to the jointly developed Mark V technology." Complaint ¶ 12(A). Rockwell's anticompetitive campaign involved its refusal to (all the following allegations are direct quotes from the Complaint):

1. make timely delivery to Raisbeck of Rockwell-manufactured parts which were essential to Raisbeck's retrofit operations and which were available to Raisbeck solely from Rockwell.... (Complaint ¶ 12(B));

2. transmit in a timely manner or to explain to Raisbeck numerous Rockwell engineering drawings for the Mark V modification.... (Complaint ¶ 12(C));

3. perform in a timely manner various other joint venture tasks which Rockwell was contractually obligated to Raisbeck to perform for the Mark V modification.... (Complaint ¶ 12(D));

4. furnish Raisbeck with promised financial, engineering and other assistance which was essential to Raisbeck's Mark V retrofit operations.... (Complaint ¶ 12(E));

5. place orders with Raisbeck for promised purchases of Raisbeck-manufactured parts and assemblies for the Mark V modification.... (Complaint ¶ 12(F)).

That course of conduct irreparably crippled Raisbeck's ability to perform Mark V modifications and plunged Raisbeck into insolvency.

Sometime before Raisbeck was due to install the Mark V System on Magic Chef's Sabreliner jet, Magic Chef learned of Raisbeck's financial predicament and operational problems (including its failure to follow "standard practices" in modifying aircraft) (Complaint ¶ 17). At that point Magic Chef "deemed Raisbeck to have repudiated and

---

1. As to the antitrust counts Rockwell advances a classic Rule 12(b)(6) motion: It says none of them states a cause of action. Its position on the pendent counts is that if the three federal claims do not survive, there will be nothing to which the state claims can attach so as to stay in this Court (diversity is lacking because both Magic Chef and Rockwell are Delaware corporations).

2. This factual rendition is based on the well-pleaded allegations of the Complaint, which must of course be accepted as true for purposes of this motion. No factual findings are made or implied by this opinion.

3. Rockwell says it did not in fact exercise that right while Raisbeck held the exclusive Federal Aviation Administration ("FAA") certification for the Mark V System and Rockwell was Raisbeck's licensee. If true, that might or might not affect the Count III monopolization claim. But such a skeletal assertion, which does not provide all the relevant facts (as a Rule 56 summary judgment motion would), may not properly be considered on the current Rule 12(b)(6) motion.

breached its Purchase Agreement" and declined to "turn its aircraft over to Raisbeck" (*id.*).

Raisbeck's problems were compounded when FAA issued a December 7, 1979 Emergency Airworthiness Directive requiring inspection (and repair, if necessary) of every Sabreliner aircraft that had been retrofitted with Mark V technology. Shortly thereafter FAA revoked Raisbeck's authorization to modify Sabreliner aircraft and issued another Airworthiness Directive grounding all Mark V modified aircraft as unsafe. To ensure Raisbeck's extinction, Rockwell then "conspired with Raisbeck to obtain Raisbeck's coerced agreement to file for reorganization under the bankruptcy laws" (Complaint ¶ 13). Several months later Raisbeck's bankruptcy trustee conducted a public sale at which Rockwell acquired the exclusive license (the "Mark V license") FAA had issued to Raisbeck to perform the Mark V modification (*id.*).[4]

But Rockwell's anticompetitive machinations had not yet run their course. Rockwell quickly withdrew the Mark V System from the market "to further the sale of [its] new, more expensive Sabreliner Model 65 aircraft," which also incorporates the Mark V technology. Rockwell did however complete the modifications of aircraft that had been in process at Raisbeck's plant when the bankruptcy petition was filed.

Having failed to obtain a Mark V retrofit from either Raisbeck or Rockwell, Magic Chef sold its Sabreliner jet. It has not yet recovered its $301,830 advance.

### Motion To Dismiss

As to its three federal claims Rockwell advances an array of contentions, all but one of which apply equally to each antitrust cause of action. Because Rockwell's one argument that implicates only Counts I and II has merit, the other grounds for dismissal need be addressed only in connection with Count III.

### Counts I and II

■ Count I charges Rockwell and Raisbeck conspired to restrain trade in the Mark V retrofit market. Count II says the conspiracy also sought to monopolize that market. Two agreements assertedly fueled the conspiracy:

1. the joint venture agreement to develop and market the Mark V modification; and

2. Raisbeck's petition for reorganization at Rockwell's behest.

But neither such agreement caused Magic Chef's claimed injury: its inability to obtain a Mark V retrofit from either Raisbeck under the Purchase Agreement or Rockwell after it acquired the FAA license.

As for the joint venture agreement, it *enabled* Raisbeck (and also Rockwell) to retrofit Sabreliner aircraft with the Mark V System (Complaint ¶¶ 5–10). Raisbeck's *inability* to carry out its obligations under the Purchase Agreement stemmed not from the creation of the collaborative arrangement but from its alleged later subversion by Rockwell.

Similarly the alleged agreement to have Raisbeck institute reorganization proceedings[5] did not occasion Magic Chef's loss. Magic Chef had already elected not to risk going forward with the Purchase Agreement before, and wholly without reference to, any such agreement. Raisbeck's known insolvency and operational difficulties, not the alleged conspiratorial agreement, had

---

**4.** No Complaint allegations specify the temporal relationship between Magic Chef's withdrawal from the Purchase Agreement on the one hand and the FAA and bankruptcy developments on the other. But Magic Chef's action unquestionably preceded both (1) Raisbeck's reorganization petition (filed after the January 1980 scheduled modification of Magic Chef's jet) and (2) FAA's rescission of Raisbeck's license (for it will be recalled Magic Chef *chose* not to deliver its aircraft to Raisbeck, which

means Raisbeck was still authorized to do the Mark V work at the time).

**5.** There is really an inherent self-contradiction in alleging Rockwell's conspiracy with Raisbeck "to obtain Raisbeck's *coerced* agreement to file for reorganization" (Complaint ¶ 13). Coercion is after all the antithesis of voluntariness. And the notion Raisbeck voluntarily committed corporate suicide is somewhat bizarre.

been the cause of Magic Chef's decision. At that point, then, Magic Chef had a money claim against Raisbeck. Even if we accept the premise that Raisbeck's later bankruptcy filing was the result of "coerced agreement":

1. Magic Chef's inability to collect on its money claim was the product of Raisbeck's insolvency. And the reorganization filing was of course itself the product of—it did not cause—that insolvency.[6]

2. If (in defiance of that logic) Magic Chef's inability to collect from Raisbeck *were* linked to the reorganization filing rather than the insolvency that caused it, that is not the stuff of antitrust injury. Magic Chef cannot be permitted thus to convert a simple damages claim against Raisbeck into a treble damages claim against Rockwell.

This same reasoning negates one part of Magic Chef's other claim—that Raisbeck's agreement to file for bankruptcy injured Magic Chef by allowing Rockwell's acquisition and subsequent abandonment of Raisbeck's Mark V license. As for the rest of that same claim, Raisbeck's initiation of bankruptcy proceedings merely conferred on an independent third party—the bankruptcy trustee—the authority to dispose of that asset. Because the trustee was neither selected nor controlled by Raisbeck's management, its public sale of the license (and Rockwell's purchase at that sale) cannot be ascribed to the claimed Rockwell-Raisbeck conspiracy.[7]

In short, the Complaint fails to allege any conspiratorial agreement between Rockwell and Raisbeck that caused antitrust injury to Magic Chef. That pleading omission is not surprising, for (as n. 5 has already said) there is a real flaw in the allegation (though this Court has accepted it for current purposes) that Raisbeck voluntarily participated in an anti-competitive scheme that called for its own extermination.

*Count III*

Count III asserts Rockwell monopolized and then destroyed the Mark V retrofit market to promote the sales of its Sabreliner Model 65 aircraft. Rockwell urges dismissal of that count on a variety of grounds:

1. Magic Chef has no standing to seek treble damages under Clayton Act § 4 ("Section 4"), 15 U.S.C. § 15, because:

(a) Magic Chef was harmed not directly as a target of Rockwell's anti-competitive practice but derivatively as a creditor of the direct target (Raisbeck).

(b) Magic Chef's injury resulted from its unilateral withdrawal from the Purchase Agreement and hence did not resemble "an 'antitrust injury' which is inextricably related to, and caused by, the alleged anticompetitive conduct." *In re Industrial Gas Antitrust Litigation,* 681 F.2d 514, 515 (7th Cir.1982), citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

2. No impairment of competition was involved, because Rockwell's purchase of Raisbeck's Mark V license merely substituted one monopolist for another.

3. Rockwell could not have monopolized the Mark V retrofit market because it "relinquished" its economic power (by not performing any Mark V modifications) as soon as it obtained Raisbeck's Mark V license.

None of those arguments withstands analysis.

---

6. Indeed the very objective of reorganization proceedings is to enable the filer to emerge from the inability to meet its current obligations that triggered filing in the first place.

7. Magic Chef strains credulity not only for the reason stated at n. 5 but by its assertion Rockwell coerced Raisbeck's agreement to give Rockwell the opportunity to buy the Mark V license from an independent bankruptcy trustee. If it had that kind of bargaining power, Rockwell could readily have pressured Raisbeck itself into selling the license—a much more direct and effective means of achieving its objective, especially where the bankruptcy trustee had the right to (and did) conduct a *public* sale.

As for the first of them, plainly Rockwell's conduct injured Magic Chef not as a creditor of Raisbeck but as a potential purchaser of the Mark V modification (from either Raisbeck *or* Rockwell).[8] And as such, Magic Chef was well within the "target area" of Rockwell's antitrust violation.[9]

According to the Complaint, Rockwell monopolized and then suppressed the Mark V retrofit market to further the sale of its new Sabreliner Model 65 aircraft, which embodied Mark V technology. In so doing it raised the price of the Mark V System to Sabreliner owners like Magic Chef (who could then acquire it only by buying the much more expensive Model 65 jet, while at the same time their older Sabreliner models, now technically obsolescent, had shrunk in value).[10] Accordingly the causal relationship between Rockwell's conduct and Magic Chef's injuries was direct enough to satisfy the "target area" requirement. *See Associated General Contractors of California, Inc. v. California State Council of Carpenters,* —— U.S. ——, ——, ——, 103 S.Ct. 897, 907–08, 909–10, 74 L.Ed.2d 723 (1983), which in the course of denying antitrust standing to a union plaintiff reconfirmed the standing of customers who are direct victims of the coercive practices (footnotes omitted):

As the legislative history shows, the Sherman Act was enacted to assure customers the benefits of price competition, and our prior cases have emphasized the central interest in protecting the economic freedom of participants in the relevant market. . . . In this case, however, the Union was neither a consumer nor a competitor in the market in which trade was. restrained.

Rockwell's other lack-of-standing argument is equally barren. According to the Complaint, Rockwell's predatory actions triggered Raisbeck's insolvency and organizational disarray, which in turn disabled Raisbeck from equipping Magic Chef's Sabreliner jet with a Mark V System. Only *after* that had occurred did Magic Chef refuse to turn over its aircraft to Raisbeck. On those allegations Magic Chef's decision was not really voluntary but, in the words of *Industrial Gas,* "inextricably related to, and caused by, [Rockwell's] anticompetitive conduct." It was not required to put its valuable aircraft in the hands—and at the risk—of a moribund Raisbeck to preserve its present claim. It did not know such risky delivery would later bring it within the exception to Rockwell's refusal to perform Mark V modifications after it secured

**8.** This analysis is entirely consistent with the earlier conclusion, as to Counts I and II, that Magic Chef had only a money claim when Rockwell and Raisbeck allegedly agreed the latter should file for reorganization. When the Count III claim focuses on Rockwell alone and not on its asserted conspiracy with Raisbeck, the significant allegation is that Rockwell plotted the entire outcome from the beginning. In that context Magic Chef was initially victimized by entering into the Purchase Agreement, and its resulting damage is discussed in this section.

**9.** This "target area" concept is one of at least three tests developed to express one of the more amorphous prerequisites for antitrust standing: the threshold "physical and economic nexus between the alleged violation and the harm to the plaintiff," *Blue Shield of Virginia v. McCready,* —— U.S. ——, 102 S.Ct. 2540, 2548, 73 L.Ed.2d 149 (1982). Our own Court of Appeals had embraced the same test, "requiring that the plaintiff be within the area of the economy which was endangered by a breakdown of competition and that plaintiff's injury be a direct result of the lessening of that competition," just before *McCready* was decided. *In re Industrial Gas Antitrust Litigation,* 681 F.2d 514, 516, 517 (7th Cir.1982). *McCready* appeared to endorse the "target area" test, quoting with approval the "target area" formulation espoused in *In re Multidistrict Vehicle Air Pollution, M.D.L. No. 31,* 481 F.2d 122, 129 (9th Cir.1973). Rockwell misinterprets the test as restricting standing to the specific targets of the anticompetitive conduct. Such distortion of the target *area* doctrine finds no support in *Industrial Gas* and was expressly repudiated in *McCready,* 102 S.Ct. at 2548 n. 15.

**10.** That Rockwell's anticompetitive endeavors failed to coerce Magic Chef into buying a Sabreliner Model 65 jet does not deprive it of antitrust standing, given its thwarted contract to purchase Mark V technology. *See* (in the related tie-in context) *Ware v. Trailer Mart, Inc.,* 623 F.2d 1150, 1153 (6th Cir.1980); *Warner Management Consultants v. Data General Corp.,* 545 F.Supp. 956, 963–65 (N.D.Ill.1982).

Raisbeck's Mark V license—an analytically distinct cause of Magic Chef's injury in the Mark V retrofit market.[11]

■ Nor did Magic Chef's failure to demand the benefit of its bargain from either Raisbeck or Rockwell cause its injury. Any such request would have been futile, given FAA's revocation of Raisbeck's Mark V license and Rockwell's performance of Mark V modifications only for Sabreliner aircraft left unfinished at Raisbeck's facilities.[12]

■ Rockwell's remaining two contentions hardly need discussion. According to the Complaint, Rockwell's conduct impermissibly impeded competition in three respects:

1. Complaint ¶ 10 alleges both Raisbeck and Rockwell initially "had the right to install the Mark V modification on existing Sabreliner aircraft."[13] Accordingly it must be accepted for current purposes that Rockwell unlawfully acquired a monopoly in the Mark V retrofit market by destroying Raisbeck and securing its Mark V license.

2. Even had Rockwell merely replaced Raisbeck as the sole supplier of Mark V modifications, its ascension to market dominance may still have run afoul of Section 2 by enhancing its economic power in the business jet market.[14] By using its control over the price (and availability) of the Mark V System, thus eliminating competition to its new Sabrejet Model 65 from used retrofitted Sabreliner jets, Rockwell could presumably charge higher prices for its new aircraft.

3. This just-stated point may be recast in a somewhat different way: By suppressing the Mark V modification to promote the sale of its Sabreliner Model 65 aircraft, Rockwell unlawfully employed its monopoly power in the market (the Mark V retrofit market) as a lever to reap competitive rewards in another market (the business jet market). *See Berkey Photo,* 603 F.2d at 275 ("a firm violates § 2 by using its monopoly power in one market to gain a competitive advantage in another, albeit without an attempt to monopolize the second market").

All Rockwell's contentions have been found wanting. Count III states a Section 2 violation for which Magic Chef has standing to seek monetary redress.

*Counts IV and V*

■ Because Count III has survived Rockwell's motion to dismiss, this Court might have the power to exercise pendent jurisdiction over Magic Chef's state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Different treatment is appropriate as between the two counts, however.

Count IV is at least reasonably related to Count III, so that judicial economy and the other considerations identified in *United Mine Workers* will be advanced by trying

---

**11.** Rockwell's reliance on *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229 (6th Cir.1981) is misplaced. There Fedders had agreed to buy Chrysler's non-automatic air-conditioning systems business in return for Chrysler's pledge not to reenter that market for the next five years. Chrysler claimed treble damages in part as a purchaser of those air conditioning systems, tracing its injury to the destruction of a seller in that market (the division it sold to Fedders). Though the Sixth Circuit held Chrysler lacked antitrust standing as a *competitor* because of its voluntary withdrawal from the market, the court did recognize Chrysler's standing as a *purchaser, id.* at 1235. Thus *Chrysler v. Fedders* buttresses Magic Chef's entitlement to sue as a disappointed purchaser for damages sustained as a result of Raisbeck's elimination from the retrofit market.

**12.** As Complaint ¶ 14 alleged, Rockwell "withdrew the Mark V modification from the market" once it obtained Raisbeck's Mark V license.

**13.** True enough, Complaint ¶ 13 says Rockwell acquired Raisbeck's *"exclusive* rights to perform the Mark V modification." That allegation is not necessarily inconsistent with Complaint ¶ 10, for Rockwell had concededly been licensed by Raisbeck to perform Mark V retrofits (though it asserts it did not do so in fact).

**14.** Section 2's prohibition against exploiting monopoly power in one market to extract competitive advantages in another market, *see Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 275 (2d Cir.1979), should equally condemn the acquisition of monopoly power if such leveraging necessarily results.

the two claims in this single lawsuit. Each depicts Rockwell as the dominant force—the monopolist in Count III, the impeller of contract breach in Count IV. Accordingly Count IV will be retained for the present as pendent to Count III. Nonetheless serious questions of fact and law as to Magic Chef's antitrust claim remain unanswered by this opinion.[15] If it were to develop that claim is contrived, and merely a weak or empty vessel designed to bring the substantive state law liability issues into this federal court,[16] this Court will consider dismissal of Count IV at that point. *See, United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139.

But Count V stands on a different footing altogether. With Counts I and II gone, no need exists to probe the asserted joint venture nature of the Rockwell-Raisbeck relationship (a matter vigorously contested by Rockwell), or indeed the claimed conspiratorial-consensual matters posed by those claims (and equally challenged by Rockwell). As this opinion has pointed out, coercion by Rockwell—consistent with Count III—is really inconsistent with joint responsibility based on contract—which is the essence of Count V. Thus Count V would really enlarge the issues materially, and it is not so intertwined with the surviving federal claim as to call for its retention under *United Mine Workers v. Gibbs,* 383 U.S. at 726–27, 86 S.Ct. at 1139.

### Conclusion

Counts I, II and V are dismissed (Count V without prejudice). Rockwell is ordered to answer Counts III and IV on or before March 28, 1983.

**15.** For example, Magic Chef's decision to repudiate the contract may have greater significance than this opinion (predicated as it is on all inferences favorable to Magic Chef) would indicate. Rockwell's willingness to complete Raisbeck's Mark V commitments on aircraft already delivered to Raisbeck might take those Sabrecraft owners out of the "target area" of the alleged monopolization. If so the effect of Magic Chef's decision to take itself out of that group would have to be evaluated.

**16.** Two other lawsuits filed against Rockwell by the same counsel, charging direct responsibility for Mark V System problems affecting plaintiffs' Sabreliner jets, have previously been on this Court's calendar (they were transferred to Judge Nordberg as part of the random assignment making up his initial calendar). This Court understands the bulk of such claims (diversity being absent) have been filed in state courts, as candidly appears more appropriate with Magic Chef's too.