IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-4968

_____

BREAUX BROTHERS FARMS, INC.,

                                        Plaintiff-Appellee,

TECHE PLANTING CO., INC. and
FRANCIS PAT ACCARDO,

                                        Plaintiffs-Appellees,
                                        Cross-Appellants,

                        versus

TECHE SUGAR CO., INC.,
SOUTH COAST SUGARS, INC.,

                                        Defendants-Appellants,
                                        Cross-Appellees.
*************************************************************

TECHE PLANTING CO., INC.,
FRANCIS PAT ACCARDO,

                                        Plaintiffs-Appellees,
                                        Cross-Appellants,
                        versus

TECHE SUGAR CO., INC.,
SOUTH COAST SUGARS, INC.,

                                        Defendants-Appellants,
                                        Cross-Appellees.

_____

Appeals from the United States District Court
for the Western District of Louisiana

_____

(        May 4, 1994        )

Before WISDOM, HIGGINBOTHAM, and JONES, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Teche Sugar Company, Inc., offered to lease to Breaux Brothers Farms, Inc., Teche Planting, Inc., and Francis Accardo land for farming sugar cane. Teche Sugar conditioned its offer on its choice of a processing mill. All three sugar farmers sued in federal district court alleging that the lease tied land to milling in violation of the Sherman Act, 15 U.S.C. § 1. The district court ruled in favor of the farmers and awarded damages. We are not persuaded that any tie of land to milling was supported by market power in the land or, relatedly, that any tie had the requisite effect on competition. We reverse.

## I.

For several years Breaux Brothers, Teche Planting, and Accardo leased land in St. Mary Parish from the Prudential Insurance Company. They grew sugar cane on the leased land each year, which they processed at a mill they selected.

The right to choose the mill is valuable. A mill that can ensure a supply of sugar cane in times of low sugar prices enjoys an economic advantage. The present dispute arose when Teche Sugar, then an owner of a mill, leased the land from Prudential. In an effort to assure cane for its mill, Teche Sugar offered to sublease land to Breaux Brothers, Teche Planting, and Accardo at a lesser rental rate than it paid Prudential. Teche Sugar conditioned its offer on a lessee's processing its cane at a mill selected by Teche Sugar. Breaux Brothers agreed, but Teche Planting and Accardo declined the offer.

2

Teche Sugar at first directed the sugar cane that Breaux Brothers produced to the Oak Lawn Mill, which Teche Sugar owned. Teche Sugar was still unable to generate enough cane for its mill and closed it before its lease with Prudential expired. Teche Sugar then designated the Raceland Sugar Mill--owned by South Coast Sugars, Inc., the co-defendant and Teche Sugar's sister company[1]-- as the site for processing Breaux Brothers' sugar. Teche Sugar allowed Breaux Brothers to send excess sugar that Raceland could not process in a timely fashion to a nearby mill, Sterling Sugar Mill. Subsequently, South Coast sold the Raceland Sugar Mill. Teche Sugar then struck a deal with Sterling by which Teche Sugar would pay Sterling a flat rate of $9 per ton to grind cane and Teche Sugar would then sell the product at whatever profit it could make. Teche Sugar had no financial interest in Sterling Sugar Mill.

## II.

The farmers argue that the lease Teche Sugar offered constituted an illegal tying arrangement. A tying arrangement is the sale or lease of one product on the condition that the buyer or lessee purchase a second product. See Northern Pacific R.R. v. United States, 356 U.S. 1, 5-6 (1958). The land that Breaux rented and the grinding services of the mills are said to be separate products.

---

[1] Teche Sugar Company and South Coast Sugars, Inc., the two defendants, are both wholly owned subsidiaries of South Louisiana Sugar, Inc.

There is a strong support for the two product argument offered by the functional approach in Jefferson Parish Hospital District No. 2 v. Hyde, 466 U.S. 2, 21-25 (1984). Whether two products exist "depends on whether the arrangement may have the type of competitive consequences addressed by the rule." Id. at 21 (footnote omitted). The argument continues that an owner of a dominant portion of a market in sugar cane land could route the cane its land produced to a mill under its control. This guaranteed source of sugar might allow it to drive other mills from the market. The land owner thus could transfer power in one market into power in another. This presents fairly straightforward antitrust doctrine, in theory. See, e.g., Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 611 (1953) ("[T]he essence of illegality in tying agreements is the wielding of monopolistic leverage; a seller exploits his dominant position in one market to expand his empire into the next."). Professor Kaplow has analyzed this danger and suggested that tying arrangements may cause harm even when they do not create power in a second market. Louis Kaplow, Extension of Monopoly Power through Leverage, 85 Col. L. Rev. 515 (1985). But we need not decide on these facts whether renting sugar cane land and grinding sugar cane constitute two separate goods. Assuming that they do and that the lease Teche Sugar offered therefore amounted to a tying arrangement, the farmers have nevertheless failed to establish that the lease violated the Sherman Act.

We begin with first principles. Not all tying arrangements are illegal. <u>Jefferson Parish Hospital District No. 2 v. Hyde</u>, 466 U.S. 2, 24-25 (1984) ("[T]he fact that [a] case involves a required purchase of two [goods] that would otherwise be purchased separately does not make the . . . contract illegal.") As <u>Jefferson Parish</u> explained it:

> [T]he law draws a distinction between exploitation of market power by merely enhancing the price of the tying product, on the one hand, and by attempting to impose restraints on competition in the market for a tied product, on the other. When the seller's power is just used to maximize its return in the tying product market, where presumably its product enjoys some justifiable advantage over its competitors, the competitive ideal of the Sherman Act is not necessarily compromised. But if that power is used to impair competition on the merits in another market, a potentially inferior product may be insulated from competitive pressures.

<u>Id.</u> at 14.

The legality of a tying arrangement depends in part on its effect in the tied market. The farmers acknowledge that Teche Sugar could have raised the rent it charged for its land, allowing the farmers to process their sugar cane at the mill of their choice. It is doubtful that Teche Sugar's decision to seek similar gains by controlling the choice of mills violates the Sherman Act.[2] Our focus today is, however, whether the lease impaired competition in the sugar cane processing market such as creating barriers to

---

[2] <u>See, e.g.,</u> Richard Posner, Antitrust Law: An Economic Perspective 173 (1976) (claiming that no difference exists between profit from increase in price of tying product and similar gains made through forcing consumer to purchase tied product). <u>But see</u> Louis Kaplow, supra, at 520-25 (arguing that method in which market power is deployed may affect extent of harm to consumer).

the entry of new competitors into that market.  Jefferson Parish, 466 U.S. at 14.  Our analysis focuses on Teche Sugar's economic strength in the sugar cane land and milling markets.  Id. at 18 ("In sum, any inquiry into the validity of a tying arrangement must focus on the market or markets in which the two products are sold, for that is where the anticompetitive forcing has its impact.").

The farmers may prevail under either of two approaches. First, to establish that the tying arrangement was illegal per se, the farmers must show that Teche Sugar exerted sufficient control over the tying market, sugar cane land, to have a likely anticompetitive effect on the tied market, sugar cane grinding. Id. at 15-18, 26-29.  Second, the farmers may prevail by establishing that the arrangement is an unreasonable restraint of trade.  Id. at 17-18, 29-31.  See also Fortner Enters. v. United States Steel Corp., 394 U.S. 495, 499-500 (1969) ("Fortner I").  We evaluate the reasonableness of the arrangement by exploring the "actual effect of the exclusive contract on competition" in both the tying and tied markets.  Jefferson Parish, 466 U.S. at 29.  We may find an antitrust violation to be an unreasonable restraint of trade only if the tying arrangement has had an "actual adverse effect on competition."  Id. at 31.

A.

A per se condemnation requires proof that the tying arrangement involved "the use of market power to force [consumers] to buy [goods] they would not otherwise purchase."  Id. at 26.  The per se rule, of course, obviates the need for full consideration of

6

actual market conditions; it does require a finding of "significant market power" in the tying market.  See id.

The farmers allege that Teche Sugar controlled as much as 17.5% of the land in the relevant market.  They base this percentage on a narrow definition of the market of sugar cane land. Sugar cane farmers can feasibly transport their crop for processing no farther than twenty five to thirty five miles from their farms. Five mills operated within approximately thirty five miles of the land that Teche Sugar offered to farmers, an area encompassing the St. Mary and Iberia Parishes.  Teche Sugar, South Coast and related companies controlled no more than 17.5% of the sugar cane farmland in St. Mary Parish and no more than 9.4% of the farmland in the two parishes combined.

The district court defined both products as the relevant market in sugar cane land.  We find that even under the narrowest of reasonable definitions Teche Sugar lacked the requisite market power to trigger a per se violation.

Land that offers a distinct economic advantage based on its location may enhance market power.  See Northern Pacific R. Co. v. United States, 356 U.S. 1 (1958).  But possession of 17.5%, much less 9.4%, of a market is not normally sufficient to satisfy the requirements of the per se rule.  The Supreme Court in Jefferson Parish, for example, found control over 30% of a tying market to fall shy of "the kind of dominant market position that obviates the need for further inquiry into actual competitive practices."  466 U.S. at 27.  Some circuit courts have used 30% as a rough benchmark

7

for the minimum amount of market power necessary to give rise to a per se violation of antitrust law.  See Grappone, Inc. v. Subaru of New England, Inc., 858 F.2d 792, 797 (1st Cir. 1988) (finding insufficient market power for per se antitrust violation); Will v. Comprehensive Accounting Corp., 776 F.2d 655, 672 (7th Cir. 1985), cert. denied, 475 U.S. 1129 (1986) (same).[3]

The farmers contend that it is a mistake to gauge Teche Sugar's market power by considering the percentage of its holdings in the relevant land market.  Sugar cane land is a rare commodity, they argue, and as a result Teche Sugar garnered significant market power.  But it is only by defining the market for sugar cane land narrowly that the farmers can maintain that Teche Sugar controlled 17.5% of that market.  This definition of the tying market includes only land in the St. Mary and Iberia Parishes and fully reflects the location of the land and the requirements of sugar cane production.  All of the sugar cane grown in the parishes can be brought to the same set of mills for processing.

The farmers also allege that leases for sugar cane land generally span several years and that only a fraction of the sugar

---

[3]  We do not imply that a plaintiff may not provide direct evidence of market power, obviating the need to inquire into the percentage of the tying market that the defendant commanded.  See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. __, 112 S.Ct. 2072, 2088 (1992) ("It is clearly reasonable to infer that [a defendant] has market power to raise prices and drive out completion in the after-markets, [where a plaintiff] offer[s] evidence that [the defendant] did so.").  Cf. Stephen Calkins, Supreme Court Antitrust 1991-92:  The Revenge of the Amici, 61 Antitrust L.J. 269, 301 (1993) ("The words 'per se' are conspicuously absent from Kodak's discussion of tying.").

cane land in a market becomes available in a given year. As a result, they reason, Teche Sugar exercised considerable power over the market despite the relatively small amount of land it held. As proof of Teche Sugar's power, the farmers note that, although some sugar cane land was on the market, no adequate alternative land was available when Teche Sugar offered them a lease.

Were we to accept the farmers' theory, any land owner in a market where sales occur only periodically would possess significant market power, and every party in control of sugar cane land in St. Mary Parish would possess such power. As the Supreme Court stated in U.S. Steel Corp. v. Fortner Enterprises, 429 U.S. 610 (1977) ("Fortner II"): "[T]he question is whether the seller has some advantage not shared by his competitors in the market for the tying product." Id. at 620 (emphasis added). See also Will, 776 F.2d at 672 (citing Fortner II). The farmers offer no reason to believe that Teche Sugar had an advantage over its competitors in the market for sugar cane land in St. Mary Parish. All of the owners of sugar cane land in the parish possessed a scarce commodity. The farmers therefore provide an inadequate basis for the conclusion that Teche Sugar possessed sufficient power in the tying market to trigger per se condemnation of the lease.

The cases on which the farmers rely do not require the contrary conclusion. The Sixth Circuit's opinion in Bell v. Cherokee Aviation Corp., 660 F.2d 1123 (6th Cir. 1981), is representative. The defendant in Bell controlled hangar and outdoor space at an airport. The defendant conditioned lease of

9

the space on the plaintiff's purchase of all fuel, maintenance, and parts required to service the plaintiff's airplanes. Bell, 660 F.2d at 1125-26. The court found that the defendant possessed sufficient power in the market for airport space, the tying market, to render the tying arrangement a per se violation of antitrust law. Id. at 1127-30. The court based its conclusion on the fact that the defendant in Bell was "a dominant firm." Id. at 1129. Moreover, the court found that the defendant was "in a uniquely advantageous position" to sell space to a party attempting to establish a business of the plaintiff's variety. Id. at 1128 (internal quotation marks omitted). Other providers of airport space, the court noted, did not occupy the same advantageous position. See id. at 1128-29. The farmers in the present case have not shown that Teche Sugar held a dominant position in the sugar cane land market or that Teche Sugar's land conferred a market advantage not possessed by its competitors.

Similarly, in Rosebrough Monument Co. v. Memorial Park Cemetery Ass'n, 666 F.2d 1130 (8th Cir. 1981), the defendants conditioned purchase of cemetery lots on the plaintiffs' purchase from defendants of any foundation preparation necessary for the plaintiffs' grave memorials. Id. at 1141. The defendants did not, however, merely tie purchase of one good to another; they also conspired to adopt a uniform tying arrangement policy in the industry. Id. at 1136-40. The court relied on the existence of this policy in concluding that the defendants' share of the market conferred significant economic power. See id. at 1143

10

("[Defendants] accounted for 22 percent of the burials performed in the market area . . ., and the exclusive foundation preparation policy, upon which [plaintiff] bases its claim, is uniformly followed by nearly all of the cemeteries."). See also Moore v. Jas. H. Matthews & Co., 550 F.2d 1207 (9th Cir. 1977) (finding antitrust violation where defendants controlled 78% of market in cemetery plots, to which they tied installation of grave markers). Cf. Ringtown Wilbert Vault Works v. Schuylkill Memorial Park Inc., 650 F.Supp. 823 (E.D. Pa. 1986).

The farmers' reliance on Ware v. Trailer Mart, Inc., 623 F.2d 1150 (6th Cir. 1980), is also misplaced. The defendant in Ware conditioned the lease of a lot in a trailer park on the purchase of a mobile home. Ware, 623 F.2d at 1152. The court held that the plaintiff had alleged in its complaint that the defendant possessed significant market power and further noted that even if the plaintiff had not made such an allegation, the omission would not preclude consideration of the plaintiff's claim under the rule of reason. Id. at 1153-54 (relying on Fortner I, 394 U.S. at 499). The court did not, however, address the issue of how much power the defendant had to possess to render the tying arrangement a per se violation of antitrust law.

## B.

The farmers nevertheless may prevail if the lease constituted an unreasonable restraint of trade. Jefferson Parish, 466 U.S. at 29. Whether this arrangement was an unreasonable restraint of trade requires an additional "inquiry into the actual effect of the

11

exclusive contract on competition" in the market for the tied good. Id. We need not explore whether Teche had sufficient market power in the market for sugar cane land, under a rule of reason test, because the tying arrangement did not hamper competition in the market for sugar cane grinding.

Teche Sugar not only failed to expand its presence in the sugar cane milling market, it also failed to maintain its presence. Teche Sugar closed the mill to which it first sent the sugar cane that Breaux Brothers produced. Teche Sugar then directed the sugar cane to the mill owned by its sister company, South Coast Sugars. Despite the advantage of a guaranteed source of sugar cane, South Coast sold its mill. The withdrawal of Teche Sugar and South Coast from the sugar mill grinding business belies the claim that Teche Sugar increased its power in the tied market.

Moreover, the farmers' contentions notwithstanding, Teche Sugar's later deal with Sterling Sugar Mill posed no threat to competition. Its terms required Teche Sugar to pay Sterling a set price to grind the sugar cane that Breaux produced. Teche Sugar in essence hired out a mill for a fixed fee. Produced sugar would be sold at the market on shares with its lessee.

When a party has no control over a tied market, the dangers usually created by a tying arrangement do not exist. See generally 9 Philip E. Areeda, Antitrust Law ¶1726a, at 331-33 (1991). Teche Sugar had no incentive to dampen competition in the sugar milling market. Any decrease in competition would be contrary to its interests. Teche Sugar would have to pay any supracompetitive

12

price its interference sparked. See id. at 332. Once Teche Sugar abandoned the business of grinding sugar, any threat that the tying arrangement might harm competition disappeared.

Teche Sugar did not eliminate competition among mills by directing sugar cane to its own mill. It attempted, unsuccessfully, to survive in the sugar milling market. This futile effort had no actual adverse effect on competition. Jefferson Parish, 466 U.S. at 31 ("Without a showing of actual adverse effect on competition, [the plaintiff] cannot make out a case under the antitrust laws" in the absence of per se liability.). As a result, there was no violation of antitrust law.

C.

As a final note, the tying arrangement held the potential to enhance competition. The sugar cane market is volatile. When sugar cane prices drop, farmers produce less cane. Mills have a difficult time weathering long seasons with slack demand. Once a period of economic duress has passed, significant costs confront any party entering into the sugar cane grinding industry. Mills may survive hard times by securing sources of sugar. The continued existence of the mills may ensure that there is greater competition when the sugar cane grinding business once again proves lucrative. Such a procompetitive effect tends to counter the anticompetitive tendencies of a tying arrangement and are relevant to any inquiry into an alleged antitrust violation. See Grappone, 858 F.2d at 799-80 (reviewing this line of cases).

13

III.

The farmers complain about the lease terms Teche Sugar offered to them.  All the farmers but Breaux rejected the lease.  The problem is not, under these circumstances, a market failure.  Rather, an excess of farmers eager to rent sugar cane land put the farmers in a vulnerable position.  The farmers suffered because of competition, not its absence.  Their personal plight is unfortunate.  But competition has not been injured and the antitrust laws offer them no relief.

REVERSED.