39 F.3d 765
 63 USLW 2350, 1994-2 Trade Cases P 70,777,
30 Fed.R.Serv.3d 1059
 Lisa HARDY, individually and on behalf of all those
similarly situated, Plaintiff-Appellant,
v.
CITY OPTICAL INCORPORATED, Dr. Lawrence Tavel, and Dr.
Edward Friel, and all other doctors employed by or
under the control of City Optical,
Incorporated, Defendants-Appellees.
 No. 94-1262.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 9, 1994.
Decided Nov. 7, 1994.
 
 Richard Loiseau of Richard Loiseau Law Offices (argued), Angel L. Ortiz, Ortiz & Associates, Indianapolis, IN, for plaintiff-appellant.
 Steven K. Huffer (argued), Mitchell, Hurst, Jacobs & Dick, Indianapolis, IN, for defendants-appellees.
 Before POSNER, Chief Judge, EASTERBROOK, Circuit Judge, and GORDON, District Judge.*
 POSNER, Chief Judge.
 
 
 1
 Lisa Hardy brought suit against City Optical, Inc., an Indiana seller of contact lenses, and the optometrists employed by it, charging violations of both federal antitrust law and the law of Indiana. Hardy had obtained contact lenses from City Optical but discovered that she could buy them more cheaply from Lens Express, a mail-order seller in Florida. She asked the optometrist at City Optical who had fitted her with her contact lenses to give her the contact-lens specifications for forwarding to Lens Express. He refused. This meant that to get fitted with lenses from Lens Express she would have to go to another optometrist and incur the expense of an examination in order to obtain the requisite specifications, without which Lens Express would not have enough information to be able to provide contact lenses that would fit her.
 
 
 2
 Hardy brought the suit on behalf not only of herself but also of all similarly situated customers of City Optical. The district court refused to certify the case as a class action, and then, on the defendants' motion for summary judgment, dismissed the suit on the ground that the federal claims were barred by the "state action" exemption from antitrust law, announced in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Hardy's appeal brings up both rulings--on class certification and on the state-action defense. The complaint contains state as well as federal claims, but the only basis for federal jurisdiction over the former is the federal district court's supplemental jurisdiction, 28 U.S.C. Sec. 1367, properly relinquished in a case in which the federal claim falls out before trial.
 
 
 3
 Should it have fallen out? The merit of the claim is obscure, quite apart from any question of exemption. The claim is that the defendants have in effect tied the sale of contact lenses to the provision of optometric services. If you get contact-lens specifications from one of City Optical's optometrists, you must as a practical matter buy your contact lenses from City Optical too, because it will not give you the specifications and as a result you will not be able to buy the lenses from another seller without being examined by an optometrist, even if you had such an examination yesterday. The rule in this circuit is that a tying agreement is not actionable unless the defendant has substantial market power in the tying product. Will v. Comprehensive Accounting Corp., 776 F.2d 665, 670-74 (7th Cir.1985). Other courts require that this threshold be crossed only if the plaintiff wants to proceed on a per se theory, Breaux Bros. Farms, Inc. v. Teche Sugar Co., 21 F.3d 83, 87 (5th Cir.1994); Grappone, Inc. v. Subaru of New England, Inc., 858 F.2d 792, 799 (1st Cir.1988), that is, wants not to have to show that the challenged restraint was in fact an unreasonable curtailment of competition. Those courts thus allow for at least the theoretical possibility of establishing a violation under a free-wheeling rule of reason approach without establishing market power. That distinction is not made in Will, and would be inconsistent with our rule that substantial market power is a threshold requirement of all rule of reason (as well as some per se) cases. Chicago Professional Sports Limited Partnership v. National Basketball Ass'n, 961 F.2d 667, 673 (7th Cir.1992); Morrison v. Murray Biscuit Co., 797 F.2d 1430, 1435 (7th Cir.1986). Although we were told at argument that City Optical has thirty to fifty stores in Indiana, it seems highly unlikely that through its optometrists it writes 30 percent or more of the contact-lens specifications written in Indiana each year, the minimum market share from which the market power required to be shown at the threshold of a tying case can be inferred. Will v. Comprehensive Accounting Corp., supra, 776 F.2d at 672; Grappone, Inc. v. Subaru of New England, Inc., supra, 858 F.2d at 797. But the defendants do not urge the apparent lack of merit of the suit as an alternative ground for our affirming the dismissal of the suit. Nor is the suit obviously frivolous, so that without the benefit of briefing we could conclude that the plaintiff had failed to invoke the jurisdiction of the district court, in which event we could properly order the suit dismissed despite the defendants' waiver. Crowley Cutlery Co. v. United States, 849 F.2d 273, 276 (7th Cir.1988).
 
 
 4
 So let us turn to the question of state action. Parker and the cases following it proceed upon the premise that Congress did not intend to allow the Justice Department or private plaintiffs to use the federal antitrust laws to obtain a judgment invalidating a state regulatory program on the ground that it created a monopoly or otherwise restrained trade. It is possible that rather few such programs would survive a challenge based on lack of conformity to the economic policies, strongly procompetitive, that inform the antitrust laws. The usual reason for enacting a regulatory program is dissatisfaction, whether disinterested or motivated by a desire for higher profits, with the results of allowing unfettered competition to operate in the industry covered by the program. Congress cannot reasonably be supposed to have intended by enacting the antitrust laws to destroy such programs and make laissez-faire the governing principle of state government.
 
 
 5
 But often it is difficult to determine whether the state has a regulatory program designed to supplant the operation of the free market. It may have a regulatory program but one that can coexist happily with the full enforcement of federal antitrust principles because the program does not require the supplanting of competition, as in Lancaster Community Hospital v. Antelope Valley Hospital District, 940 F.2d 397 (9th Cir.1991). Or, what amounts to the same thing, the state may not have its own regulatory program for the industry in question but instead may have charged the industry with duties of self-governance yet without commanding it to discharge those duties in a fashion that curtails competition. FTC v. Ticor Title Ins. Co., --- U.S. ----, ----, 112 S.Ct. 2169, 2179, 119 L.Ed.2d 410 (1992), and Patrick v. Burget, 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988), illustrate this second aspect of the doctrine. The second aspect has been muddied by the language of "active supervision," without which the exemption fails. FTC v. Ticor Title Ins. Co., supra, --- U.S. at ----, 112 S.Ct. at 2179. "Active supervision" sounds more like monitoring than like commanding, and yet it is clear that for the private actor to be exempt the state must have "made [his] conduct its own." Patrick v. Burget, supra, 486 U.S. at 106, 108 S.Ct. at 1665. Well, can the state make conduct its own without requiring it? It can. A state or municipality rarely commands its self-regulated industries to commit specific anti-competitive acts, though sometimes it does, as when a city refuses to allow the taxi companies operating within it to add to the number of cabs, which would increase competition and reduce price. Typically the state authorizes the industry to fix rates or otherwise regulate competition, and the Supreme Court wants assurance that when the state does this it is not just offering a blanket exemption from the antitrust laws but is deliberately supplanting the competitive regime with a cartelistic one. See Southern Motor Carriers Rate Conference, Inc. v. United States, 471 U.S. 48, 65, 105 S.Ct. 1721, 1731, 85 L.Ed.2d 36 (1985). Active supervision is some evidence that the industry really is exercising delegated state power in committing anticompetitive acts, Town of Hallie v. City of Eau Claire, 471 U.S. 34, 46, 105 S.Ct. 1713, 1720, 85 L.Ed.2d 24 (1985), so that the enforcement of federal antitrust principles would interfere with the state's pursuit of its regulatory policies. Permission is not policy unless the state has a definite intention as to how the permission will be exercised and takes measures to see that it is exercised in the intended fashion. The distinction is between a state that is indifferent to how a particular industry is regulated, and a state that prescribes self-regulation intending that the result will be an economic regime different from that of competition.
 
 
 6
 The statute and regulation on which the defendants rely require that in response to a written request by a patient a provider of medical (including optometric) services must give his patient the patient's health records. But "information concerning contact lenses may be given in general terms," which are defined as a statement as to whether the lenses are soft or hard and the "spectacle lens prescription"--the correction required for glasses--as distinct from the additional specifications (such as the radius of the eye) that the supplier needs to provide contact lenses that will actually fit the patient. Ind.Code Sec. 16-4-8-2(b); 852 Ind.Admin.Code Sec. 1-5.1-1(c). So far, there is nothing to prevent the optometrist from furnishing the patient or anyone else with the contact-lens specifications; he just is not required to do so. But another section of the regulation provides that "if an optometrist prescribes contact lenses for a patient, the optometrist has a responsibility to ... (2) examine the patient and evaluate the contact lens with the contact lens on the eye; and (3) be personally and directly involved with the follow-up care of the contact lens patient." Id., Sec. 1-5.1-1(b). The defendants argue that an optometrist who gave the patient the patient's contact-lens specifications would be violating his duty both to evaluate the contact lens while it is on the eye and to be personally involved with the follow-up care of the patient. The patient would--as the plaintiff here wanted to do--use the specifications to obtain contact lenses from another source and might not bring the lenses back to the optometrist who had furnished the specifications to have the lenses evaluated.
 
 
 7
 Hardy is complaining about an alleged plot by City Optical not to permit anyone for whom it writes contact-lens specifications to use them to obtain contact lenses from anyone else. If that is what the statute and regulation command, or if though the specific act is not commanded the state's regulatory objectives would be impaired if the act were forbidden in the name of antitrust law, then the state-action exemption comes into play and the defendants are not liable under federal antitrust law. We do not think that the statute and regulation can reasonably be so read; nor is there any indication that the Indiana Board of Optometry, which regulates the practice of optometry in the state and promulgated the regulation, interprets its creation and the statute so. If the legislature or the board had intended that the patient must always return to his optometrist for replacement lenses, it could easily have said so. It did not. The optometrist is not required but is permitted to give the patient the contact-lens specifications, and the only purpose for which the patient would want them would be to get contact lenses elsewhere; if he wanted to get them from the optometrist who wrote the specifications he would not need to have a copy of them. Apparently the draftsmen envisaged circumstances in which optometrists would be free to give contact-lens specifications to their patients to be filled elsewhere.
 
 
 8
 Of course, what the left hand giveth, the right may take away. But it is difficult to extract from the provisions on evaluating the contact lens on the eye and participating personally in follow-up care a prohibition, inconsistent with the statute and the next section of the regulation, against giving the patient the specifications for his contact lenses. The obvious interpretation of subsection (b)(2) is that the optometrist cannot just write a prescription and then wash his hands of the patient. He must make sure that the contact lenses fit the patient properly and he must do so by inspecting the contact lenses when they are on the patient's eyes, for otherwise he cannot be sure the lenses really fit. It hardly follows that if the patient is moving to another state, the optometrist would be violating the law of Indiana by giving the patient the contact-lens specifications so that when the patient needed replacement lenses he could obtain them and have them fitted without returning to Indiana. And we take "follow up" care in the next subsection similarly, as forbidding the optometrist to refuse to see the patient should the patient have some problem adjusting to the lenses and return seeking follow-up care. It is implausible that if the patient had trouble with his lenses in a different state and went to a local optometrist for follow-up care, the Indiana optometrist who had written the patient's contact-lens specifications would be subject to sanction by the optometry board for having given the prescription to the patient in response to the patient's request and explanation of the circumstances.
 
 
 9
 Read with the permissive rather than mandatory language governing the release of the prescription to the patient, the provisions on which the defendants rely merely require the optometrist who writes specifications for a patient's contact lenses to meet professional standards in the care of patients. Just as it would be unprofessional for a surgeon to fail to remove (or at least arrange for the removal of) the stitches after his patient's incision had healed, so it would be unprofessional for an optometrist to fail to check the contact lenses that he had prescribed, when the lenses were on the patient's eye. But if the patient in our surgical example moved to Mandalay the day before the stitches were to be removed, the surgeon could hardly be faulted for having failed to remove them; and so with the optometrist whose patient decides to take her chances with mail-order replacement lenses. At most--though we are dubious--one might tease out of the regulation a requirement that the optometrist warn the patient that she must get her new lenses checked by an optometrist, or even satisfy himself that she intends to do so. So far as appears, Hardy did so intend and in fact Lens Express recommends to its customers that they have the lenses they buy from it fitted to them by an optometrist.
 
 
 10
 We have been emphasizing the language of the statute and regulation but there is also no evidence that through active supervision or otherwise the state has adopted a policy that prevents optometrists from giving the contact-lens specifications to their patients. Apparently it is not the practice of the highly respected Indiana University hospital. So far as appears, it is the practice of City Optical alone, and it would be implausible to infer a state policy limited to this one chain of optical-supply stores. We conclude that Indiana has not sought to supplant the form of competition--competition from mail-order houses in the sale of contact lenses to residents of the state--that the complaint charges the defendants with attempting to suppress.
 
 
 11
 The decision dismissing the suit must therefore be reversed. But we do not think that the ruling denying class certification should be disturbed, although we reject the two reasons given by the district judge. The first was that Hardy is not an appropriate class representative because the defendants have a defense unique to her--that she failed to request her contact-lens specifications in writing, as the statute requires. It is true that a plaintiff against whom the defendants have a defense not applicable to other members of the class is not a proper class representative. Koos v. First National Bank, 496 F.2d 1162 (7th Cir.1974); Fed.R.Civ.P. 23(a)(3). That plaintiff's claim is quite likely to be dismissed even if the other class members' claims are meritorious, and once dismissed from the suit the plaintiff can no longer be the class representative. Glidden v. Chromalloy American Corp., 808 F.2d 621, 626 (7th Cir.1986); Weinberger v. Retail Credit Union, 498 F.2d 552, 556 (4th Cir.1974); U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). At that point either another class representative must be found, Kremens v. Bartley, 431 U.S. 119, 135, 97 S.Ct. 1709, 1718, 52 L.Ed.2d 184 (1977), or the suit is kaput.
 
 
 12
 But the "unique defense" here, while possibly unique, is not a defense. The defendants have made clear from the start of this case--and their counsel repeated at oral argument--that they would not have given Hardy her contact-lens specifications even if she had requested them in writing, because they interpret the regulation as forbidding them to give a patient his contact-lens specifications in any circumstances. The law does not require a futile act. Honig v. Doe, 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988); Ohio v. Roberts, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980); Cronin v. U.S. Dept. of Agriculture, 919 F.2d 439, 443 (7th Cir.1990); Geary v. Dominick's Finer Foods, Inc., 129 Ill.2d 389, 135 Ill.Dec. 848, 853, 544 N.E.2d 344, 349 (1989); Gillie v. State, 512 N.E.2d 145, 150 (Ind.1987); Neyland v. Brammer, 73 S.W.2d 884, 888 (Tex.Civ.App.1933). Hardy would not have gotten the specifications by writing for them. She saved the price of a stamp.
 
 
 13
 The judge's second ground for denying class certification was that antitrust suits, at least when they involve issues of coercion and damages, are not appropriate for class treatment. In support of this proposition the judge cited only the defendants' memorandum in opposition to class certification and a district court decision from Texas. This was not an adequate engagement with a difficult question. There have been many antitrust class actions in which the relief sought was damages, and the fact that the damages would generally be different for each member of the class was not deemed an insuperable obstacle. Weiss v. York Hospital, 745 F.2d 786, 809 (3d Cir.1984); Bogosian v. Gulf Oil Corp., 561 F.2d 434, 452 (3d Cir.1977); Brown v. Pro Football, Inc., 146 F.R.D. 1, 4 (D.D.C.1992); cf. Reiter v. Sonotone Corp., 442 U.S. 330, 344-45, 99 S.Ct. 2326, 2333-34, 60 L.Ed.2d 931 (1979). As for coercion, since City Optical has a blanket policy of refusing to give its patients their contact-lens specifications we do not see how the issue would create unworkable complexity in a class-action setting. Everyone who requested his specifications was turned down. Some responded by getting their replacement lenses from City Optical at a higher price than they would have gotten them elsewhere--which is why they wanted their specifications--and the difference in price is their damages. Others got new specifications, paying an optometrist's fee which is the measure of their damages. Why these claims could not be consolidated in a class action is not easy to see, and is not illuminated by anything in the district court's opinion or the defendants' submissions.
 
 
 14
 But in their brief in this court the defendants make a plausible argument, not alluded to by the district court, for why Hardy is not an appropriate class representative. It involves her failure to make a written request for her specifications. That failure has no substantive significance, as we have seen. But a class defined as all persons who within the statute of limitations orally or in writing requested their contact-lens specifications from City Optical may present serious problems of manageability. City Optical submitted an affidavit in which it states that it has a record of every patient who has submitted a written request for his or her specifications. Were the class limited to such patients, the identification of the class members for purposes of notice would be feasible. But if the class is broadened to include patients who made only oral requests--as it must be for Hardy to be within the class and thus an eligible candidate for class representative--the problem of identifying and thus of notifying the class members may be infeasible. May be. Or may not be, since, for all that appears, City Optical has a record of the oral requests too. Nevertheless it is an issue that would have to be explored before Hardy could be deemed an adequate class representative.
 
 
 15
 But in response to this argument by City Optical, Hardy in her reply brief said exactly nothing. When an appellee advances an alternative ground for upholding a ruling by the district judge, and the appellant does not respond in his reply brief or at argument (the issue did not come up at argument either), he no more concedes the correctness of the ruling than an appellee by failing to file any brief at all consents to have the judgment in his favor reversed. 7th Cir.R. 31(d); Singletary v. Continental Illinois Nat'l Bank, 9 F.3d 1236, 1240 (7th Cir.1993); In re Insurance Antitrust Litigation, 938 F.2d 919, 932 (9th Cir.1991), rev'd in part on other grounds under the name Hartford Fire Ins. Co. v. California, --- U.S. ----, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993). But he waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee. In re Incident Aboard the D/B Ocean King, 758 F.2d 1063, 1071 n. 9 (5th Cir.1985). City Optical claims, not wholly implausibly, that a class defined as it must be for Hardy to be an appropriate representative would be unmanageable. Hardy does not deny that such a class action would be unmanageable, and she could not reasonably have assumed that its manageability was obvious to us, so that it was unnecessary for her to explain why it was manageable. In an adversary system, in which by its nature judges are heavily dependent on the lawyers to establish the facts upon which decision will be based, the failure to reply to an adversary's point can have serious consequences. The district judge's ruling denying class certification must be affirmed even though it is conceivable that if he had explored the issue he would have found the problem of unmanageability to be less serious than City Optical claims.
 
 
 16
 The denial of class certification is therefore affirmed, but the dismissal of the suit on the basis of the state-action exemption to federal antitrust law is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 17
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 Hon. Myron L. Gordon of the Eastern District of Wisconsin