## LENS EXPRESS, INC. and Managed Vision, Inc., Appellants

v.

## Lois EWALD, as Executive Director of Texas Optometry Board, Dan Morales, Individually and as Attorney General of the State of Texas, and Texas Optometric Association, Inc., Appellees.

No. 03–94–00435–CV.

Court of Appeals of Texas, Austin.

Aug. 16, 1995.

---

Julie A. Springer, Scott, Douglass & Luton, L.L.P., Austin, for appellants.

Dan Morales, Attorney General, Ann Hartley, Assistant Attorney General, Elder Law & Public Health Division, Austin, for Lois Ewald.

Joe R. Greenhill, Jr., Wright & Greenhill, Austin, for Texas Optometric Association.

Before POWERS, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

This appeal ensues from a summary judgment granted in favor of appellees Lois Ewald, as Executive Director of the Texas Optometry Board, Dan Morales, as Attorney General of the State of Texas, and the Texas Optometric Association, Inc. (collectively the "State"). Appellants Lens Express, Inc. and its subsidiary, Managed Vision, Inc., ("Lens Express") raise three arguments in five points of error. We will affirm the trial court's judgment.

## BACKGROUND

The Texas Optometry Act (the "Act") as interpreted by the Texas Optometry Board (the "Board") authorizes, but does not require, optometrists licensed in Texas to release contact lens prescriptions to patients who request them. Texas Optometry Act, Tex.Rev.Civ.Stat.Ann. art. 4552, §§ 1.02(3)(A), 5.18(e) (West Supp.1995); see 22 Tex.Admin.Code §§ 279.1, .2 (1995). Additionally, the Act requires an unlicensed "dispensing optician" or "ophthalmic dispenser" to obtain a complete physical copy of the patient's prescription before dispensing lenses. Tex.Rev.Civ.Stat.Ann. art. 4552, §§ 1.02(3)(A), 5.18(e) (West Supp.1995); see 22 Tex.Admin.Code §§ 279.1, .2 (1995).[1] Lens Express is a Florida corporation that dispenses contact lenses by mail at discount prices and is designated as a "dispensing optician" or "ophthalmic dispenser" under the Act.

On October 2, 1992, the State filed suit against Lens Express seeking injunctive relief and civil penalties for alleged violations of the Act. On December 17, 1993, Lens Express settled with the State by signing an Agreed Final Judgment with Permanent Injunction, in which Lens Express agreed to comply with Article 4552 section 1.02(3)(A) of the Act and with Board Rules sections 279.1 and 279.2, and agreed to refrain from selling contact lenses to Texas consumers without a proper prescription. The parties further stipulated that: (1) Lens Express did not waive its right to challenge the constitutionality of the Act or Board Rules, and (2) the agreement would be rendered null and void if either the statute or the board rules were held unconstitutional.

In order to penetrate the Texas market, Lens Express had also entered into "preferred provider" contracts with optometrists who were willing to charge a discounted rate for their services. The Board, however, claimed that these agreements violated certain articles of the Act that prohibit manufacturers, wholesalers, and retailers of ophthalmic goods from controlling a professional optometrist and require that the practices of optometry and therapeutic optometry remain separate from the business of dispensing ophthalmic goods. Tex.Rev.Civ.Stat.Ann.

---

1. Board Rules section 279.1 defines a fully written contact lens prescription; section 279.2 prohibits ophthalmic dispensers from selling contact lenses without a fully written contact lens prescription. Article 4552, § 1.02(3)(A) of the Act defines "fitting lenses"; Article 4552, § 5.18(e) makes it an offense to dispense contact lenses without a valid prescription.

art. 4552, §§ 5.11(a)(1), (2), (b)(1), (3); 5.15(a) (West Supp.1995). In response, Lens Express formed a separate corporation, Managed Vision, Inc., to enter into the agreements. Managed Vision does not manufacture, wholesale, or retail ophthalmic products.

On the same day that Lens Express agreed to the final judgment and permanent injunction, it filed this suit for declaratory and injunctive relief, requesting the following: (1) a judgment declaring that certain parts of the Act and the Board Rules create a monopoly and violate the due process clauses of both the United States and Texas constitutions; (2) a judgment declaring that the contracts between Managed Vision and Texas optometrists do not violate the provisions of the Act that prohibit dispensing opticians from controlling professional optometrists or the provisions which require that the practices of optometry and therapeutic optometry be completely separate from the business of selling ophthalmic goods; and (3) injunctions against the State, preventing it from enforcing the Act and Rules provisions requiring the dispensing optician to have a complete, physical copy of the contact lens prescription and preventing it from curtailing the agreements between Managed Vision and Texas optometrists through the enforcement of the Act.

The State subsequently moved for summary judgment, arguing that: (1) the Act does not create a monopoly in Texas; (2) the fact that the Act may be inefficient does not mean that it is unconstitutional; and (3) the Board, which has primary jurisdiction over the agreements between Texas opticians and Managed Vision, had not yet ruled on their validity, precluding the trial court's exercise of jurisdiction over the agreements. The State presented two uncontroverted facts in support of its motion: (1) in March 1994 there were over twenty-six hundred optometrists licensed to practice in Texas, and (2) over eighteen hundred of those licensed op-

tometrists actually do practice in Texas. In its response, Lens Express relied generally on all of the pleadings and papers on file and on six depositions. The trial court granted the State's motion for summary judgment.

By five points of error, Lens Express argues the trial court erred by: (1) granting summary judgment for the State on Lens Express's substantive due process claim; (2) granting summary judgment against Lens Express's request for a declaratory judgment that the State's rules create a monopoly; and (3) dismissing Lens Express's request for a declaratory judgment that certain agreements between Managed Vision and Texas eye doctors do not violate the State's relevant rules.

## DISCUSSION

### I. *Summary Judgment*

 The standards for reviewing a motion for summary judgment are well established: (1) The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

### A. *Substantive Due Process & Equal Protection*

 We review economic and social welfare statutes challenged on substantive due process or equal protection grounds[2] under the "rational-relationship" standard. John E. Nowak, Ronald D. Rotunda, & J. Nelson Young, *Constitutional Law* § 11.4 (3d ed. 1986). To survive these constitutional challenges, the statute need only be "rationally

2. Although Lens Express couches its argument in substantive due process language, the State contends that it actually challenges the Act and Board Rules on equal protection grounds, *viz.*, the differentiation between licensed optometrists and dispensing opticians. The difference is im-

material to our inquiry: economic and social welfare legislation challenged on either ground is reviewed under the same standard. John E. Nowak, Ronald D. Rotunda, & J. Nelson Young, *Constitutional Law* § 11.4 (3d ed. 1986).

related to a legitimate end." *Massachusetts Indem. & Life Ins. Co. v. Texas State Bd. of Ins.*, 685 S.W.2d 104, 114 (Tex.App.—Austin 1985, no writ). Our standard of review is elevated to "strict scrutiny" only if the statute (1) limits a fundamental, constitutionally secured right, or (2) implicates a suspect class. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985); *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 559 (Tex.1985); *R Communications, Inc. v. Sharp*, 839 S.W.2d 947, 951 (Tex.App.—Austin 1992), *rev'd on other grounds*, 875 S.W.2d 314 (Tex.1994).

■ Relying on our decision in *Toungate v. Bastrop Independent School District*, 842 S.W.2d 823 (Tex.App.—Austin 1992, no writ), Lens Express argues in its first three points of error that the trial court erred in granting the State's motion for summary judgment because the trial court can only assess the rationality or reasonableness of the legislation called into question by the opinions of its experts after a full evidentiary trial. We disagree. In *Toungate*, the plaintiff claimed that a rule regulating male students' hair length was unconstitutional under the Texas Equal Rights Amendment. *Id.* at 825; *see* Tex. Const. art. I, § 3a. The Equal Rights Amendment elevates sex to a suspect class, thereby invoking strict scrutiny review when a law differentiates on the basis of gender. *Id.* at 826. Under strict scrutiny, legislation is accorded no presumption of validity, and therefore summary judgment may not be appropriate. *Id.* at 826–27.

■ In this case, however, the appropriate standard of review is not strict scrutiny, but rational relationship. The right to sell contact lenses in Texas is not a fundamental right, and unlicensed optometrists are not a suspect class. Under the rational-relationship test, the law "must be upheld ... if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification." *Federal Communications Comm'n v. Beach Communications, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1992) (emphasis added); *see also Massachusetts Indem.*, 685

S.W.2d at 110. As the Supreme Court has succinctly stated:

A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. *A statute is presumed constitutional ... and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record.* Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality.

*Heller v. Doe*, —— U.S. ——, ——, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993) (quotations and citations omitted) (emphasis added).

■ In its motion for summary judgment, the State provided the trial court with a conceivable situation in which an optometrist would justifiably refuse to release a contact lens prescription to a patient. The State argued that if optometrists were required to give patients their prescriptions, some patients might abuse the use of the prescription by wearing disposable contact lenses for too long and refusing to visit their doctor until permanent eye damage had occurred. Lens Express presented Dr. Kenneth Malamud's affidavit which stated that in his opinion there was no legitimate state interest embodied in the Act. The opinion of a party's expert witness is not enough to overcome the presumption of validity we accord legislative acts that do not affect a suspect class or a fundamental right. Moreover, as this Court has previously noted, "[T]he question of what is a 'suitable' law is not within the power of a court to decide. By its very nature, it is a political question committed to the legislature because it calls for pure public-policy decisions beyond a court's competence." *Texas Workers' Com-*

*pensation Comm'n v. City of Bridge City,* 900 S.W.2d 411, 415 (Tex.App.—Austin, 1995, no writ h.). It was therefore unnecessary for the trial court to consider further factual evidence, and summary judgment was appropriate.

Relying on the San Antonio Court of Appeals's decision in *Texas Workers' Compensation Commission v. Garcia,* 862 S.W.2d 61, 75 (Tex.App.—San Antonio 1993), *rev'd,* 893 S.W.2d 504 (Tex.1995), Lens Express also argues that the trial court erred in applying the rational-relationship standard because due process inquiry under the Texas Constitution involves a stricter standard of review. *See* Tex. Const. art. I, § 19. On appeal in *Garcia,* however, the supreme court declined to clearly embrace a more stringent standard of review for state constitutional challenges and found that the workers' compensation statute at issue was rational enough to meet either standard. *Garcia,* 893 S.W.2d at 525. Accordingly, we continue to follow our conclusion in *Massachusetts Indemnity* that the federal rational-relationship standard applies to challenges under the Texas Constitution as well. 685 S.W.2d at 113. At all events, we find that any distinction between state and federal standards of review is irrelevant to our decision here because the challenged provisions are reasonable enough to pass the more rigorous standard followed by some Texas courts. *See Garcia,* 893 S.W.2d at 525.

Finally, Lens Express contends that the ultimate state interest in this case has been adequately questioned to preclude summary judgment. Both United States and Texas Supreme Court decisions have validated a state's interest in promoting the public health as a basis for regulation of the optometry profession. *See Williamson v. Lee Optical,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955); *Texas State Bd. of Examiners in Optometry v. Carp,* 388 S.W.2d 409, 415 (Tex.1965). We therefore conclude that this argument is without merit. Accordingly, we overrule Lens Express's first, second, and third points of error.

**B. *Monopoly***

In its fourth point of error, Lens Express argues that the trial court erred in granting summary judgment for the State because the Act and Board Rules violate Article I, section 26 of the Texas Constitution by creating a monopoly. In order to prove that a monopoly exists in violation of state or federal law, Lens Express must prove: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *Caller–Times Publishing Co. v. Triad Communications,* 826 S.W.2d 576, 580 (Tex.1992) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966)). On a motion for summary judgment, however, the burden is on the State to prove that no genuine issue of material fact exists with respect to at least one of these elements. *See Nixon,* 690 S.W.2d at 548–49. Lens Express suggests that optometrists and ophthalmologists have a monopoly on the sale of contact lenses in Texas because a complete prescription is required in order for any other entity to sell the lenses to consumers. They further contend that this monopoly is not a valid exercise of police power. We disagree.

The State presented uncontroverted evidence that more than twenty-six hundred optometrists are licensed in Texas and that more than eighteen hundred of them actually practice here. "The word *monopoly* loses much of its meaning when applied to a market in which there are ten or more competitors." *Arkansas Fuel Oil Co. v. State,* 154 Tex. 573, 280 S.W.2d 723, 727 (1955). The existence of so many competing optometrists suggests that, absent a price-fixing conspiracy, competition will prevent them from charging outrageous sums for contact lenses. Lens Express does not argue that such a conspiracy exists. This uncontroverted evidence negating an essential element of Lens Express's claim demonstrates that no genuine issues of material fact existed with respect to the allegations of a monopoly. Moreover, the Texas Supreme Court has

held that a statute does not necessarily create a monopoly simply because it confers rights on some and not others, as long as the distinction is justified. *Jannin v. State*, 42 Tex.Crim. 631, 51 S.W. 1126, 1127 (1899). As we have already noted, the State provided a reasonable public health rationale for the statute's distinctions between licensed optometrists and unlicensed dispensers such as Lens Express.

Both parties have also referred us to the Seventh Circuit's decision in *Hardy v. City Optical, Inc.*, 39 F.3d 765 (7th Cir.1994), as authority. We note that in *Hardy* the court determined that an Indiana statute similar to the one challenged in this case did not create a monopoly: "We conclude that Indiana has not sought to supplant the form of competition—competition from mail-order houses in the sale of contact lenses to residents of the state—that the complaint charges the defendants with attempting to suppress." *Id.* at 770. Because we hold that the challenged sections of the Act and the Board Rules do not create a monopoly, we need not reach the issue of whether such a monopoly would constitute a valid exercise of police power. We overrule Lens Express's fourth point of error.

## II. *Dismissal of Request for Declaratory Judgment*

In its final point of error, Lens Express argues that the trial court erred in dismissing its request for a declaratory judgment that the agreements between Managed Vision and Texas optometrists did not violate the Act. The trial court dismissed Lens Express's request without prejudice as premature and subject to exhaustion of administrative rulings and remedies.

"'Primary jurisdiction' is a judicially created doctrine whereby a court may dismiss or stay an action, pending a resolution of some portion of the case by an administrative agency," and was properly applied in this case. *Shell Pipeline Corp. v. Coastal States Trading*, 788 S.W.2d 837, 842 (Tex. App.—Houston [1st Dist.] 1990, writ denied). The doctrine is premised on efficiency and expertise:

Administrative questions, which are ordinarily questions of fact, matters which call for the technical knowledge of an administrative agency, must first be determined by the agency before judicial relief can be sought. *This primary jurisdiction is exclusive. A court does not have jurisdiction to determine administrative questions, or to adjudicate controversies involving them until they have been determined by the appropriate administrative agency.*

*Kavanaugh v. Underwriters Life Ins. Co.*, 231 S.W.2d 753, 755 (Tex.Civ.App.—Waco 1950, writ ref'd) (internal citation omitted) (emphasis added). *Kavanaugh* suggests that not only is it proper for the trial court to choose to dismiss such a question, but that the court *must* dismiss it. The question before us, however, is not so broad—we need only decide whether the trial court was justified in dismissing Lens Express's request.

Primary jurisdiction is at its strongest "where uniformity of certain types of administrative decisions is desirable, or where there is a need for the expert and specialized knowledge of the agencies." *Shell Pipeline*, 788 S.W.2d at 842 (citing *United States v. Western Pac. R.R.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)). In order for the Act to be enforced fairly, uniformity of decision is of paramount importance. The determination whether an agreement between Lens Express's subsidiary and Texas optometrists violates the Act is an inherently fact-based inquiry that can best be accomplished by those with an in-depth understanding of the practice of optometry and a familiarity with the issues and the law in question. Accordingly, we conclude that the trial court correctly dismissed Lens Express's request for a declaratory judgment, and we overrule its fifth point of error.

The judgment of the trial court is affirmed.