**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FRANK LUIS CAYETANO-CASTILLO,

    Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

    Respondent.

No. 15-9503
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PORFILIO**, and **PHILLIPS**, Circuit Judges.
_____

Frank Luis Cayetano-Castillo, a native and citizen of Peru, seeks review of a

decision by the Board of Immigration Appeals (BIA) upholding the denial of his

applications for asylum, restriction on removal, relief under the Convention Against

Torture (CAT), and administrative closure. We dismiss the challenges regarding

asylum and administrative closure for lack of jurisdiction and deny the remainder of

the petition.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.
But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R.
32.1.

BACKGROUND

Cayetano entered the United States in 2000 without admission or inspection. In 2008 the Department of Homeland Security (DHS) charged him with being removable. He conceded the charge before an immigration judge (IJ), and in 2009 he submitted an application for asylum, withholding of removal, and CAT protection.

At his hearing in April 2013, Cayetano stated that he did not seek asylum earlier because he "had no information about this possibility and [he was] very, very afraid to go back to [Peru] for fear to be murdered." R. at 189. He testified that his fear stemmed from his problems with the "Apocalypse" gang in Peru. *Id.* at 172. According to Cayetano, Apocalypse gang members twice tried to rob him and "they insulted [him and his family] with racial comments." *Id.* at 175. He claimed that the gang members were able to identify where he was from "because of the color of [his] skin" and because "people from the hills" have a different accent. *Id.* at 176. He conceded, however, that he was born in Lima and had lived there "[a]lmost [his] whole life." *Id.* at 193.

Cayetano provided the following account of one sequence of attacks by the Apocalypse gang. While in Lima with his mother in January 2000, four or five gang members robbed them and tried to rape her. He fought back, stabbing one of the assailants in the neck with some house keys. While the gang members were attending to their fallen associate, Cayetano and his mother escaped. But several hours later the gang members broke into his home and beat, knifed, and shot him. He was hospitalized for three days and soon afterwards fled the country. His father

2

contacted the police, but the resulting police report—which indicated he "was threatened by two . . . construction masons because . . . [he] tried to invade, trespass in the territory"—was fabricated by police to protect the gang. *Id.* at 186.

Cayetano further stated that after he left Peru the gang members threatened his parents. As recently as five months before the hearing (and more than a decade after he left Peru), gang members purportedly broke into his family's home and told his parents "that if [he] ever return[ed] to Peru [he] was going to be murdered" along with "the rest of [his] family." *Id.* at 183. His parents did not report the threat to police and he testified that he was unable to obtain any evidence to support the recent threat because he was undergoing cancer treatment.

Cayetano sought asylum and withholding of removal on the ground that he had been persecuted as a member of a social group of "[i]ndividuals from the Peruvian countryside [who] have relocated to the city of Lima [and] who have retaliated against the Apocalypse gang." R. at 167. He also requested CAT protection. And he sought administrative closure to provide time for him to deal with his health if he was unable to obtain other relief.

The IJ denied all relief and the BIA upheld the decision. First, the BIA concluded that Cayetano's asylum application was untimely as he had failed to file within one year of arriving in the United States and had not shown changed or extraordinary circumstances to excuse the late filing. Second, it rejected restriction on removal because he had failed to show (1) that he belonged to a cognizable particular social group, (2) that the Apocalypse gang targeted him because of his

3

membership in any social group, or (3) that Peruvian authorities were unable or unwilling to protect him.[1]  Third, it denied CAT protection because he had not shown that he was tortured in Peru or that the Peruvian government would instigate or acquiesce in his torture by a private group.  And fourth, it concluded that the IJ had properly exercised her judgment in finding administrative closure inappropriate.

## DISCUSSION

### I.  Standards of Review

A single member of the BIA affirmed the IJ's decision in a brief order.  We review the BIA's decision, but "we are not precluded from consulting the IJ's more complete explanation of those same grounds."  *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).  "We review the BIA's legal determinations de novo and its findings of fact for substantial evidence."  *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010).  Under the substantial-evidence standard, factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011) (internal quotation marks omitted).

### II.  Asylum

An alien must apply for asylum within one year of arriving in the United States.  *See* 8 U.S.C. § 1158(a)(2)(B).  A late application may be considered,

---

[1] The BIA determined that Cayetano's restriction-on-removal claim failed on the additional ground that he had not provided sufficient corroborative evidence.  The government concedes that this determination was erroneous in part, but argues that the error was harmless.  We agree on harmlessness because Cayetano's restriction-on-removal claim fails on independent alternative grounds.

4

however, if the alien demonstrates "extraordinary circumstances relating to the delay in filing an application." *Id.* § 1158(a)(2)(D).

Cayetano asserts that we must remand to the BIA to consider whether his anxiety disorder, which "result[ed] from the beating he was subjected to in January of 2000, constitutes . . . an extraordinary circumstance." Pet'r's Br. at 20. But both the IJ and the BIA rejected this attempt to avoid the time bar, and we cannot review their decision.

Under 8 U.S.C. § 1158(a)(3) we ordinarily lack "jurisdiction to review a decision regarding whether an alien established changed or extraordinary circumstances that would excuse [his] untimely filing." *Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006) (internal quotation marks omitted). Although there are exceptions to this jurisdictional bar for constitutional claims and questions of law, *see* 8 U.S.C. § 1252(a)(2)(D), neither of those exceptions applies in this case. Cayetano's challenge is "directed solely at the agency's discretionary and factual determinations" and "remain[s] outside of the scope of judicial review." *Ferry*, 457 F.3d at 1130 (10th Cir. 2006) (internal quotation marks omitted). We therefore dismiss this part of Cayetano's petition for lack of jurisdiction.

### III.  Restriction on Removal

"Generally speaking, an alien may not be removed to a particular country if he or she can establish a clear probability of persecution in that country on the basis of race, religion, nationality, membership in a particular social group, or political opinion." *Elzour v. Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004).

> An alien may create a rebuttable presumption of eligibility for restriction on removal by either (1) demonstrating past persecution in the proposed country of removal on account of one of the protected grounds[ ]; or (2) showing that it is more likely than not that the alien would be subject to persecution on one of the specified grounds upon returning to the proposed country of removal[.]

*Sidabutar v. Gonzales*, 503 F.3d 1116, 1123-24 (10th Cir. 2007) (citations and internal quotation marks omitted).

Cayetano argues that the BIA erred in concluding that he did not belong to a cognizable particular social group.[2] We disagree. For an alien to belong to such a group, the group must be "socially distinct" and not "indeterminate[,] too subjective, inchoate, and variable." *Rodas-Orellana v. Holder*, 780 F.3d 982, 990-91 (10th Cir. 2015). The BIA properly determined that Cayetano's proposed social group— "[i]ndividuals from the Peruvian countryside [who] have relocated to the city of Lima [and] who have retaliated against the Apocalypse gang," R. at 167—is not socially distinct.

A set of traits defines a socially distinct group if "citizens of the applicant's country would consider individuals with the pertinent trait[s] to constitute a distinct social group" and "the applicant's community is capable of identifying an individual as belonging to the group." *Rodas-Orellana*, 780 F.3d at 991 (internal quotation

---

[2] The government argues that we should "apply the substantial evidence standard of review to the question of whether a proposed social group is cognizable in a particular case." Resp. Br. at 19 n.3. It recognizes, however, that in *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1191 (10th Cir. 2005), this court prescribed de novo review of an issue in this context. To resolve this case we need not decide to what extent the social-group determination may be fact-bound and reviewed under a more deferential standard.

marks omitted). Cayetano has not pointed to any evidence that Peruvian society considers residents of Lima who relocated from the countryside and retaliated against the Apocalypse gang to be a distinct social group. Nor has he indicated how an individual with those traits would "be potentially identifiable by members of the community." *Id.* (internal quotation marks omitted). At most, he has shown that his family would be identifiable as being "from the Peruvian countryside" because of their "accent and skin color." Pet'r's Br. at 33. But he does not explain how his retaliation against the gang would be identifiable or how he would fit into his claimed social group given his testimony that he was born in Lima and had lived there most of his life.

Further, the IJ and BIA properly found that Cayetano had not shown that the Apocalypse gang targeted him because he belonged to any particular social group. *See Niang v. Gonzales*, 422 F.3d 1187, 1200 (10th Cir. 2005) ("For persecution to be 'on account of' membership in a social group, the victim's protected characteristic must be central to the persecutor's decision to act against the victim."). His testimony indicates that the gang's principal motivation was criminal profit. He testified that the gang robbed him on several occasions, attempted to rape his mother, and then attempted to murder him for injuring a gang member. Nothing in the record suggests that these crimes were motivated by Cayetano's membership in any social group. *See* R. at 319 ("Peru is said to have one of the highest reported crime rates in Latin America" with "a crime occur[ing] every three minutes in the city of Lima."); *id.* at 331 ("[T]here are several gangs operating in Lima which study and choose their

7

'marks' at banks and outside financial establishments."); *id.* at 335 ("Crime . . . has been an ongoing issue in Lima . . . .").

We affirm the denial of restriction on removal.

### IV.  The CAT

To be eligible for protection under the CAT, an alien must show "that it is more likely than not that he . . . would be tortured if removed to that country." *Elzour*, 378 F.3d at 1150.  The anticipated torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 1208.18(a)(1).

The BIA determined that Cayetano failed to "establish that he was tortured in Peru or that the Peruvian government will instigate or acquiesce to [Cayetano's] being . . . torture[d] by any private person or group."  R. at 6.  He now contends that his case must be remanded for the agency "to discuss whether the beating" by the Apocalypse gang constituted torture.  Pet'r's Br. at 44.

We reject this contention on two grounds.  First, Cayetano did not argue on appeal to the BIA that his beating rose to the level of torture; indeed, he did not advance any CAT claim before the BIA.  Ordinarily, arguments not raised before the BIA are waived for failure to exhaust.  *See Tulengkey v. Gonzales*, 425 F.3d 1277, 1279 n.1 (10th Cir. 2005).

Second, even if we overlook the waiver because the BIA generally addressed the CAT claim, *see Sidabutar*, 503 F.3d at 1122, and even if we assume that the beating constituted torture, Cayetano still failed to establish an essential element of

8

his CAT claim. He must show that the Peruvian government would more than likely consent or acquiesce in his future torture by the Apocalypse gang. He cites only his testimony that after his father told police about the beating, the police prepared a "report [that was] completely false . . . to protect the[ ] criminals." R. at 184. The IJ found this testimony insufficient to show a likelihood of future torture acquiesced in by the government, and the BIA determined that the record supported the IJ's finding. We cannot say that the IJ and BIA were unreasonable in being unpersuaded by Cayetano's evidence. *See Sidabutar*, 503 F.3d at 1122 ("Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." (internal quotation marks omitted)).

## V. Administrative Closure

"Administrative closure is a procedural tool created for the convenience of the Immigration Courts and the Board." *Matter of Avetisyan*, 25 I. & N. Dec. 688, 690 (BIA 2012). It "is used to temporarily remove a case from an [IJ's] active calendar or from the Board's docket . . . to await an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court and may not occur for a significant or undetermined period of time." *Id.* at 692. Cayetano argues that the IJ and BIA abused their discretion by not administratively closing the case so he could remain in the United States under the supervision of a doctor for one more year "to establish that his health is stable." Pet'r's Br. at 47.

The BIA has offered the following standards to judge the appropriateness of administrative closure:

> [I]t is appropriate for an [IJ] or the [BIA] to weigh all relevant factors presented in the case, including but not limited to: (1) the reason administrative closure is sought; (2) the basis for any opposition to administrative closure; (3) the likelihood the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party, if any, in contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceedings (for example, termination of the proceedings or entry of a removal order) when the case is recalendared before the [IJ] or the appeal is reinstated before the [BIA].

*Avetisyan*, 25 I. & N. Dec. at 696. Further, it says that closure is not appropriate for "an event or action that may or may not affect the course of an alien's immigration proceedings." *Id.*

The decision to deny administrative closure would appear to be in keeping with these criteria, particularly in light of the irrelevance of Cayetano's health to his immigration case and the long delays that had already occurred in the case. But we do not resolve that issue. The government argues that we have no jurisdiction to review the denial of closure because there are no meaningful standards to review the agency action. This question has divided our fellow circuits. *Compare Hernandez v. Holder*, 606 F.3d 900, 904 (8th Cir. 2010) (there is no meaningful standard of review to judge the agency's action); *Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1117 (9th Cir. 2009) (same), *with Vahora v. Holder*, 626 F.3d 907, 918–19 (7th Cir. 2010) (denial of administrative closure is "most closely akin" to the denial of a continuance and should be reviewed for abuse of discretion); *Cantu-Delgadillo v. Holder*, 584 F.3d 682, 686 (5th Cir. 2009) (reviewing denial of administrative closure); *Garza-Moreno v. Gonzales*, 489 F.3d 239, 242-43 (6th Cir. 2007) (same).

10

On some future occasion this court may need to examine this jurisdictional issue carefully. But Cayetano apparently thinks it was not worth his effort to respond on the matter in a reply brief, perhaps because of a sense that his position on the merits (assuming we had jurisdiction to address them) was so weak. In that circumstance, we are not required to do his work for him and dissect the government's plausible argument. We agree with the Seventh Circuit that "[w]hen an appellee advances an alternative ground for upholding a ruling by the [lower tribunal], and the appellant does not respond in his reply brief . . . , he [does not] concede[] the correctness of the ruling . . . [,] [b]ut he waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee." *Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994); *see also In re FCC 11-161*, 753 F.3d 1015, 1100-01 (10th Cir. 2014) (rejecting appellant's argument when its reply brief does not address appellee's counterargument), *cert. denied*, 135 S. Ct. 2050, *and cert. denied*, 135 S. Ct. 2072 (2015); *Velazquez-Perez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 278-79 (1st Cir. 2014) (employment-retaliation claim waived where plaintiff failed to address in his opening brief or file a reply brief addressing the employer's argument against the claim); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure of plaintiffs to file a reply brief addressing defendant's argument amounted to a concession that their claim was meritless); *City of Olmsted Falls v. Fed. Aviation Admin.*, 292 F.3d 261, 274 (D.C. Cir. 2002) (dismissing plaintiff's claim as jurisdictionally barred where plaintiff failed to respond in its reply brief to an allegation of waiver). We will

11

accept the government's jurisdictional argument for the purposes of this case and dismiss the administrative-closure claim for lack of jurisdiction.[3]

## CONCLUSION

The petition for review is dismissed to the extent it concerns asylum and administrative closure, and it is denied in all other respects.

Entered for the Court

Harris L Hartz
Circuit Judge

---

[3] Of course, before exercising jurisdiction and addressing the merits, we would have to independently examine and determine our jurisdiction.

12